COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Bray and Senior Judge Hodges
Argued by Teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0906-97-1         JUDGE WILLIAM H. HODGES
                                        OCTOBER 14, 1997
TONY MAURICE DAVIS


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Junius P. Fulton, Judge

            Marla Graff Decker, Assistant Attorney
            General (Richard Cullen, Attorney General;
            John K. Byrum, Jr., Assistant Attorney
            General, on brief), for appellant.

            Michael E. Grey (Gary P. Arsenault; Grey &
            Arsenault, P.C., on brief), for appellee.



        In this appeal, taken pursuant to Code § 19.2-398, the

Commonwealth contends that the trial judge erroneously suppressed

evidence, finding that the police exceeded their authority in

implementing a traffic checking roadblock.  The Commonwealth

argues that Davis never fell subject to the traffic check and its

validity was, therefore, immaterial to Davis' seizure.  We agree

and reverse the order of suppression.

                                I.

        On August 7, 1996, Norfolk police officers established a

traffic checkpoint on Lexington Street between O'Keefe Street and

Amelia Street.  Lexington Street is a one-way street.  Officer

Rychen was assigned to a "chase car," located on Proescher

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Street.[1]  The task of the chase car was to stop vehicles that backed up, turned around, or otherwise attempted to avoid the roadblock.

Rychen saw a car driven by Davis pass him on Lexington Street heading towards the checkpoint.  Rychen received a radio message concerning the vehicle, pulled onto Lexington Street, and observed the car moving backward on the one-way street away from the checkpoint and toward Rychen's car.  Rychen activated his emergency lights.  As the vehicle backed in the wrong direction along Lexington Street, a passenger with a pistol in his waistband jumped from the car and ran between houses along the street.  When Rychen exited his car and began to chase the passenger, Davis, the driver, also jumped from the car and began "yelling."  Rychen testified at the suppression hearing that he stopped Davis because he observed him commit a traffic infraction and attempt to avoid the checkpoint.

Rychen, who did not know whether Davis was also armed, was, therefore, concerned for his safety and the safety of others and instructed Davis to lie on the ground.  When assistance arrived, Rychen looked into the car Davis had been driving and observed an exposed handgun between front seat cushions.

## II.

Davis moved the trial court to suppress both the weapon and oral statements made by him to the police.  He argued that Rychen

[1]Proescher Street is one block away from O'Keefe Street.

-2-

lacked reasonable suspicion to make the stop and that the traffic checkpoint, as implemented, was unconstitutional. He argued that the roadblock deviated from the plan authorized by the police and that his arrest occurred after the period for which the checking detail had been authorized.

The Commonwealth argued, inter alia, that Rychen had a reasonable, articulable suspicion to seize Davis and that because Davis was not stopped at the checkpoint, its constitutionality was not implicated in the stop.

The trial judge held that at the point at which Rychen stopped Davis, "the officer certainly had a right to stop him and to investigate, which is what happened, so I don't have a problem with that part." The judge, however, granted the motion to suppress, holding:

> The problem I have with this case is that, in effect, this roadblock extended beyond the authority that was given to these officers by their superiors. So the extent to which the police operated this roadblock is such that it would affect people who should be caught and probably will be caught again if they continue to do what they were doing on that day and will also affect me, you, and anybody else who happens to be driving down Lexington Street on that particular day and find yourself in the position where I've got to go through a roadblock, even if I want to turn on O'Keefe or not.
>
> And I tend to believe the defendant that he could not turn on O'Keefe because he could have just turned there and not driven in reverse, if in fact, O'Keefe wasn't blocked off.

III.

For purposes of Fourth Amendment analysis, "[i]n order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (en banc). See California v. Hodari D., 499 U.S. 621, 628 (1991). "[S]topping a motor vehicle and detaining the operator [at a roadblock] constitute a 'seizure' within the meaning of the Fourth Amendment . . . . " Lowe v. Commonwealth, 230 Va. 346, 349, 337 S.E.2d 273, 275 (1985).

Here, Davis never reached the roadblock. He stopped his car after backing it, the wrong way on a one-way street, away from the checkpoint. "[Davis] did not submit to the authority of the police officers at the roadblock nor was he seized by proceeding to and going through the roadblock." Thomas, 24 Va. App. at 54, 480 S.E.2d at 138.

In Thomas, the driver, Thomas, stopped his truck on the shoulder of an exit ramp, thirty yards before reaching the roadblock. He and a passenger exited the truck and Thomas walked to the passenger's side of the truck, standing next to the passenger. An officer approached and accused Thomas of being the driver, which he denied.

We rejected Thomas' argument that he was seized when he entered traffic on the exit ramp because he was in the "zone" of the roadblock and could not legally avoid going through it. Id. at 55, 480 S.E.2d at 138. Although we recognized that Thomas'

-4-

"options and freedom of movement may have been limited" due to the placement of the roadblock at the end of the exit ramp, we held that "[f]or a seizure to occur, there must be more than an impending threat that a person's freedom of movement may be restricted or limited; a seizure occurs 'only when there is governmental termination of freedom of movement <u>through means intentionally applied</u>.'" <u>Id.</u> (quoting <u>Brower v. Inyo County</u>, 489 U.S. 593, 597 (1989)).

Thus, unless a citizen is actually stopped at the roadblock, its constitutionality is immaterial to the seizure. <u>Id.</u> Here, Davis, like Thomas, was not stopped at the roadblock, therefore, the constitutionality of the roadblock is immaterial.

Thus, we turn to the question of whether, as the trial court found, Rychen had the necessary level of suspicion of criminal activity to justify an investigatory seizure. "We view the evidence in a light most favorable to [Davis], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). We are bound to review <u>de novo</u> the ultimate questions of reasonable suspicion and probable cause. See <u>Ornelas v. United States</u>, 116 S. Ct. 1657, 1663 (1996).

A valid investigatory stop requires a reasonable and articulable suspicion of criminal activity, based upon the totality of the circumstances. See <u>Beckner v. Commonwealth</u>, 15

Va. App. 533, 539, 425 S.E.2d 530, 534 (1993). The quantum of suspicion required for such a stop is less demanding than the standard for probable cause. See Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 270 (1989). "Actual proof that criminal activity is afoot is not necessary; the record need only show that it may be afoot." Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992).

Here, prior to the seizure, Rychen observed Davis driving backward, the wrong way on a one-way street, away from the traffic checkpoint. Rychen saw an armed passenger jump from the car while it still was moving. Davis stopped the car, exited, and began yelling. These factors combined to provide Rychen with reasonable suspicion that criminal activity may be afoot, properly justifying the stop. See Thomas, 24 Va. App. at 56, 480 S.E.2d at 138; Commonwealth v. Eaves, 13 Va. App. 162, 165-66, 408 S.E.2d 925, 927 (1991) (abrupt, but legal u-turn 100 to 500 feet before checkpoint, at last possible crossover before checkpoint, where signal activated at last moment before turn executed, provided reasonable suspicion to officer that driver took evasive action because he was operating vehicle in violation of law).

Accordingly, the trial judge erroneously granted the motion to suppress, the attendant order is reversed, and the case remanded for further proceedings consistent with this opinion.

-6-

Reversed and remanded.

Benton, J., dissenting.

Because the traffic safety checkpoint, as implemented, was constitutionally defective and because the officer had no reasonable basis to stop and detain Tony Maurice Davis for backing his automobile along the street, I would affirm the ruling of the trial judge.

I.

Pursuant to a plan prepared by Officer M.J. Johansen and approved by Lieutenant W.D. Creekmore, the Norfolk police established a motor vehicle safety checkpoint on Lexington Street in the City of Norfolk. The plan stated that the checkpoint would be located at the "800 block of Lexington" Street and operated from 11:00 a.m. to 1:00 p.m. Officer Johansen testified that this plan authorized chase cars on O'Keefe Street and Amelia Street.

The evidence, viewed in the light most favorable to Davis, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), proved that the checkpoint deviated in several ways from the plan approved by Lieutenant Creekmore. First, although the plan authorized a roadblock at the 800 block of Lexington Street, the roadblock was actually at the 700 block of Lexington Street. Second, while the plan did not authorize the police officers to block O'Keefe Street, the deviation in the checkpoint's location effectively blocked traffic traveling on Lexington Street from entering O'Keefe Street. Thus, if a car

-8-

entered Lexington Street, a one-way street, at any place after Proescher Street, it was in the roadblock.  Third, the plan only authorized chase cars on Amelia Street and O'Keefe Street. However, Officer M.D. Rychen testified that he was operating a chase car on Proescher Street.  Fourth, the checkpoint did not begin at the scheduled time of 11:00 a.m.  Rather, it began an hour and a half later at 12:30 p.m.  Fifth, although the checkpoint was scheduled to end at 1:00 p.m., the officers did not terminate the checkpoint until 1:45 p.m.

No evidence proved that the changed location had been approved.  Officer Johansen testified that the time change was orally approved by Lieutenant Creekmore.  However, the report submitted after completion of the checkpoint did not indicate that the time change had been approved.  Davis was apprehended at 1:05 p.m., five minutes after the time authorized for termination of the checkpoint.

## II.

The Fourth Amendment requires that a roadblock "be undertaken pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock."  Simmons v. Commonwealth, 238 Va. 200, 203-04, 380 S.E.2d 656, 658-59 (1989).  To be constitutional, a roadblock must be "safe and objective in its operation, employ[ing] neutral criteria, and . . . not involv[ing] standardless, unbridled discretion by the police officer in the

field." Lowe v. Commonwealth, 230 Va. 346, 352, 337 S.E.2d 273, 277 (1985). Thus, when the police have adopted a roadblock plan, the officers in the field do not have discretion to deviate from that plan. See Brown v. Commonwealth, 20 Va. App. 21, 25, 454 S.E.2d 758, 759 (1995). "'To allow the [police] to do anything short of complying in full with [their] own guidelines would inject an element of discretion into the [checkpoint] procedures and thus undercut the very foundation upon which the [checkpoint] seizure is constitutionally justified.'" Id. (citation omitted).

By moving the roadblock to the 700 block of Lexington Street, extending the time of the roadblock beyond that authorized in the plan, and stopping Davis after the roadblock was scheduled to be terminated, the officers exercised "the type of 'unconstrained exercise of discretion' that violates the Fourth Amendment guarantees against stopping and detaining private citizens without probable cause or reasonable suspicion of criminal activity or other justifiable reasons." Id. (citation omitted); see Delaware v. Prouse, 440 U.S. 648, 663 (1979). Even small deviations from the authorized plan render a roadblock unconstitutional. See Brown, 20 Va. App. at 25, 454 S.E.2d at 759 (citing Commonwealth v. Anderson, 547 N.E.2d 1134, 1137–38 (Mass. 1989) (stopping a driver fifteen minutes after the scheduled termination of the roadblock is unconstitutional)).

Thus, I would affirm the trial judge's finding that "this roadblock extended beyond the authority that was given to these

officers by their superiors."  Because the checkpoint did not conform to the authorized limits contained in the plan and was, therefore, invalid, I would hold that the warrantless stop of Davis contravened the protections of the Fourth Amendment. Accordingly, the trial judge correctly ruled that the stop was an illegal seizure and suppressed the evidence.

## III.

The majority holds that because Davis was not stopped at the roadblock, the constitutionality of the roadblock is immaterial. However, when we view the evidence in the light most favorable to Davis, the roadblock encompassed Lexington Street from Amelia to Proescher Streets, blocking O'Keefe Street.  Thus, Davis was effectively within the zone of the roadblock as soon as he entered Lexington Street and passed the chase car on Proescher Street.  Even assuming that Davis was not seized simply by traveling in this area, see Thomas v. Commonwealth, 24 Va. App. 49, 55, 480 S.E.2d 135, 138 (1997) (en banc), he was seized when he was detained by Officer Rychen's chase car.

Officer Rychen testified that the reason he stopped Davis' vehicle was because he received a radio message from another officer at the roadblock indicating that a vehicle was attempting to avoid the roadblock.  In response to this radio message, Officer Rychen pulled onto Lexington Street and observed Davis' vehicle moving backward on the street.  Officer Rychen testified that the purpose of a chase car is to stop vehicles that back up,

-11-

turn around, or otherwise attempt to avoid the roadblock. Although the evidence proved that Lexington Street is residential with on-street parking permitted, Officer Rychen intended to stop any vehicle that backed on the street. Therefore, when Davis was stopped for avoidance of a roadblock by the roadblock chase car whose specific purpose was to stop vehicles that back up, Davis was seized within the meaning of the Fourth Amendment. "[S]topping a motor vehicle and detaining the operator [because of a roadblock] constitute a 'seizure' within the meaning of the Fourth Amendment." Lowe, 230 Va. at 349, 337 S.E.2d at 275. Accordingly, I would hold that the constitutionality of the roadblock is material.

                              IV.

I would also hold that Officer Rychen did not have a reasonable, articulable suspicion to stop Davis and that, therefore, the seizure violated the Fourth Amendment.

To stop and detain a vehicle for investigatory purposes, "[t]he detaining officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Zimmerman v. Commonwealth, 234 Va. 609, 612, 363 S.E.2d 708, 709 (1988) (citation omitted). Thus, the detaining officer must have at least an articulable and reasonable suspicion that the motorist is unlicensed, the vehicle is unregistered, or the motorist or vehicle is otherwise subject to seizure for violation of the law. See Prouse, 440 U.S. at

-12-

663; Waugh v. Commonwealth, 12 Va. App. 620, 621, 405 S.E.2d 429, 429 (1991).

Officer Rychen admitted that he "did not move [his] vehicle onto Lexington Street because of anything [he] observed about the defendant's driving." He testified that "the only reason that [he] moved [his] vehicle onto Lexington Street was because [he] received a message from another officer." Officer Rychen stated that when he entered Lexington Street to stop Davis' vehicle, he "stopped [Davis] because he was doing a traffic violation and also trying to avoid the traffic safety checkpoint."

Even if I accept the majority premise that Davis was not stopped by the roadblock, backing a vehicle in the vicinity of a traffic checkpoint does not in itself raise the necessary suspicion of criminal activity justifying an investigatory stop. See Murphy v. Commonwealth, 9 Va. App. 139, 384 S.E.2d 125 (1989). A driver is permitted to avoid a roadblock by making a lawful driving maneuver before reaching the roadblock. Id. at 145, 384 S.E.2d at 128-29. Because the mere backing up in the vicinity of a traffic checkpoint is not sufficient to justify Officer Rychen's stop of Davis, the record must show that the officer had some other articulable, reasonable suspicion that Davis was unlicensed, his vehicle unregistered, or that he was otherwise engaged in criminal activity.

The only other reason articulated by Officer Rychen for his stop of the vehicle was that he observed Davis committing a

-13-

traffic violation.  However, backing one's automobile on a public street is not a violation of the traffic laws.  Only when a driver, while backing a vehicle on a public street, operates a vehicle in an unsafe manner does a violation occur.  The manner of backing must constitute reckless or improper driving.  Code §§ 46.2-852 and 46.2-869.[2]

Indeed, statutes that govern the rules of the road recognize that backing a vehicle is a necessary part of driving.  They require only that a driver look first to determine whether the maneuver can be made safely and, when appropriate, to signal the maneuver.  For example, a violation of Code § 46.2-848 occurs only where a driver who intends to back a motor vehicle does not "first see that such movement can be made safely and, whenever the operation of any other vehicle may be affected by such movement, [does not] give the signals required . . . plainly visible to the driver of such other vehicle, of his intention to make such movement."  This statute does not make backing a vehicle on a public street a traffic violation.  The majority cites to no statute that does.

Backing a vehicle is a common maneuver performed by every driver.  Unless that maneuver is performed unsafely or without the appropriate signals, it does not constitute a traffic

---

[2]Code § 46.2-852 provides that "any person who drives a vehicle on any highway recklessly . . . or in a manner so as to endanger the life, limb, or property of another shall be guilty of reckless driving."  Code § 46.2-869 is the lesser included offense of improper driving.

violation.  No evidence in the record indicates that Davis was operating his vehicle in an unsafe manner.  Indeed, Officer Rychen never issued Davis a citation for reckless driving or any other traffic violation.  Furthermore, the evidence does not exclude the reasonable hypothesis, consistent with Davis' testimony, that Davis was backing to a parking space to visit his aunt.  Under these circumstances, Davis was conducting a lawful traffic maneuver.

Because Officer Rychen was without reasonable cause to stop Davis' vehicle, I would affirm the trial judge's order suppressing the evidence.