Richmond

JIMMY ROGERS MURPHY

v.

COMMONWEALTH OF VIRGINIA

No. 1474-87-2

Decided September 26, 1989

COUNSEL

William H. Sewmake (J. Thomas McGrath, Coates & Davenport, on briefs), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this appeal we consider whether because the defendant made a lawful right turn' approximately 350 feet in front of a roadblock a police officer had a reasonable suspicion of a traffic infraction or criminal wrongdoing justifying a stop of the defendant's vehicle.

Jimmy Rogers Murphy, who was convicted in a bench trial of driving after having been adjudged an habitual offender, contends that the Richmond police officer who stopped him had no legal basis to do so. The Commonwealth, relying on Rule 5A:18, contends that Murphy did not timely object at trial to the constitutionality of the stop and should not be heard on appeal. As to the merits, the Commonwealth argues that the stop was justified because Murphy's alleged attempt to avoid a police roadblock gave the officer an articulable and reasonable suspicion that Murphy was in violation of the traffic laws or involved in criminal wrongdoing. We hold that Murphy timely objected at trial to the stop. We further hold that a driver's action in making a legal turn within sight of a roadblock does not give a police officer a reasonable basis to suspect that the driver is involved in criminal wrongdoing.

On May 6, 1987, the Richmond police were operating a permit and decal checkpoint in the 1800 block of Belt Boulevard. Officer Brian Katz testified that the license and decal check was conducted "just about every Sunday that man power permits." Officer Katz testified that his task in the roadblock was to act as a "chase car." Katz testified that while manning his car he witnessed a truck, later determined to have been operated by Jimmy Rogers Murphy, drive toward the checkpoint. When the truck was approximately 350 feet from the checkpoint the driver made a normal and legal right turn onto Angela Drive, a dead end street with apartments facing onto it. Officer Katz acknowledged that nothing distinguished the operation of Murphy's truck from the actions of any driver who simply intended to turn onto Angela Drive. Officer Katz activated his red lights and pursued the turning vehicle. Katz overtook and stopped the vehicle. When Murphy

parked and exited the truck, Officer Katz recognized him as a person he knew to have a suspended operator's license. Before issuing Murphy a traffic summons for operating with a suspended license, Katz checked with the Department of Motor Vehicles and found Murphy to have been adjudged an habitual offender. Katz arrested Murphy for driving after having been declared an habitual offender.

At trial Murphy stipulated that he had been adjudged an habitual offender by order of October 30, 1986. Officer Katz testified that in the four and one-half years he had worked roadblocks he had pursued approximately twenty vehicles where the driver had apparently attempted to avoid the roadblock. He offered no evidence of how many of those operators had suspended licenses, were habitual offenders, or were involved in criminal wrongdoing. The trial court held the stop was a lawful investigatory detention based upon reasonable suspicion of criminal wrongdoing and found Murphy guilty of driving after having been declared an habitual offender. Murphy was sentenced to four years imprisonment, three of which were suspended for ten years.

## I.

We first address the Commonwealth's claim that Murphy's appeal should be dismissed because he failed to make a timely objection to the alleged violation of his fourth and fourteenth amendment rights. Murphy first objected to the constitutionality of the stop after Officer Katz had testified. In order for a challenge to evidence to be timely, Rule 5A:18 requires an objection be made "at the time the evidence is offered or the statement made." *Marlowe v. Commonwealth*, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).

After Officer Katz explained what he had observed that caused him to stop Murphy, the record contained for the first time the facts surrounding the stop. Murphy objected and challenged the constitutionality of the stop, assigning specific reasons therefor immediately after Officer Katz testified. Under these circumstances, we find that Murphy made a timely objection to the stop. We are required to consider the issue on appeal.

## II.

 When the police stop a vehicle and detain its occupants, the action constitutes a "seizure" of the person for fourth amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Zimmerman v. Commonwealth*, 234 Va. 608, 611, 363 S.E.2d 708, 709 (1988). If the stop of the vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *Simmons v. Commonwealth*, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). Any warrantless stop of a vehicle which leads to an arrest of its occupants requires probable cause to believe that a crime has been committed. *Prouse*, 440 U.S. at 654 n.10. However, if an officer has an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law," the officer may conduct an investigatory stop of the vehicle limited in time and scope to ascertaining whether the suspicions are accurate. *Id.* at 663; *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984); *Zimmerman*, 234 Va. at 611, 363 S.E.2d at 709.[1] The Commonwealth contends that Murphy's vehicle was stopped for investigatory purposes because the officer had a reasonable suspicion of unlawful activity based on Murphy's apparent avoidance of the police roadblock.

Murphy argues that the stop and detention of him and the vehicle were invalid under the fourth and fourteenth amendments of the United States Constitution. Murphy concedes that the initial stop and detention did not constitute a full scale arrest or search, but contends that it was an illegal investigatory stop, frequently referred to as a *"Terry"* stop. *Terry v. Ohio*, 392 U.S. 1 (1968).[2]

---

[1] The law is equally well established that motor vehicles may be stopped, without probable cause or an articulable and reasonable suspicion, at police roadblocks which are carried out "pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock." *Simmons*, 238 Va. at 203, 380 S.E.2d at 658; *Lowe v. Commonwealth*, 230 Va. 346, 337 S.E.2d 273 (1985), *cert. denied*, 475 U.S. 1084 (1986).

[2] While the initial stop of Murphy's vehicle was the direct result of a police roadblock, he does not challenge the constitutionality of the roadblock on appeal. Murphy advances no argument that because the roadblock was the direct cause of his action which led to the stop that the constitutionality of the roadblock is implicated.

Murphy has limited this appeal to whether the trial court erred in finding that Officer Katz had a sufficient basis to justify an investigatory stop of his vehicle.

In determining whether an "articulable and reasonable suspicion" justifying an investigatory stop of the vehicle exists, courts must consider "the totality of the circumstances—the whole picture." *United States v. Sokolow*, 109 S. Ct. 1581, 1585 (1989); *see Zimmerman*, 234 Va. at 612, 363 S.E.2d at 709. As we stated in *Castaneda v. Commonwealth*, 7 Va. App. 574, 376 S.E.2d 82 (1989) (en banc):

> Each instance of police conduct must be judged for reasonableness in light of the particular circumstances.
>
> Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.' "

*Id.* at 580, 376 S.E.2d at 85 (citations omitted). Therefore, when a court reviews whether an officer had reasonable suspicion to make an investigatory stop, it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer. Based upon that objective assessment courts must determine whether the officer could have entertained an articulable and reasonable suspicion that the defendant was involved in unlawful activity. *Zimmerman*, 234 Va. at 612, 363 S.E.2d at 709. If the officer's suspicion amounts to merely an "inchoate and unparticularized suspicion or 'hunch' . . . [rather] than a fair inference in the light of his experience, [it] is simply too slender a reed to support the seizure" under the fourth and fourteenth amendments of the United States Constitution. *Reid v. Georgia*, 448 U.S. 438, 441 (1980).

In this case, Officer Katz stopped Murphy after the officer saw him make a legal right turn onto a dead end street approximately 350 feet from a police roadblock. Officer Katz testified that he was acting as the "chase car" and that his role was to go

after vehicles which turned to avoid the roadblock.[3] Katz further testified that he noted nothing unusual or suspicious about Murphy's vehicle or the operation of it, except for the fact that it turned prior to reaching the roadblock. In *Stroud v. Commonwealth*, 6 Va. App. 633, 636, 370 S.E.2d 721, 723 (1988), a panel of this court found that an abrupt U-turn executed 100 to 150 feet before a roadblock raised a reasonable suspicion of criminal activity in the mind of a state trooper with eleven years experience. In contrast, we find that the act of a driver in making a lawful right turn 350 feet before a roadblock does not give rise to a reasonable suspicion of criminal activity unless the driver's turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some behavior which independently raises suspicion of criminal activity. *See Snyder v. State*, 538 N.E.2d 961, 965 (Ind. Ct. App. 1989) (holding that while a U-turn might give rise to a reasonable suspicion, witnessing a legal turn before a roadblock, standing alone, does not constitute a sufficient articulable fact to warrant an objective, reasonable suspicion); *see also Pooler v. Motor Vehicle Division*, 88 Or. App. 475, 746 P.2d 716 (1987), *aff'd*, 306 Or. 47, 755 P.2d 701 (1988) (a legal U-turn does not itself constitute a reasonable suspicion); *People v. Scott*, 63 N.Y.2d 518, 483 N.Y.S.2d 648, 473 N.E.2d 1 (1984) (written operating procedures which allowed police officers from a roadblock to follow drivers avoiding the roadblock to observe for traffic violations, thus implying that the act of making a U-turn, standing alone, would not be enough to constitute a reasonable suspicion). "Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." *Iglesias v. Commonwealth*, 7 Va. App. 93, 100, 372 S.E.2d 170, 174 (1988) (en banc). Factors as subtle as the difference between a U-turn 150 feet from a roadblock and a lawful turn into an existing roadway 350 feet from a roadblock may affect the determination. While Murphy's turn onto the dead end street may have justified a "hunch" that the driver might be in violation of the traffic laws or might be involved in criminal activity, a legal turn into an existing roadway prior to reaching a checkpoint, standing alone,

---

[3] No evidence was introduced that the prescribed procedure for operating the roadblock required that a "chase car" pursue without discretion every car within a designated radius that turns to avoid the roadblock. Since Murphy does not challenge the validity of the roadblock, the constitutionality of required nondiscretionary use of "chase cars" to stop every turning vehicle within a certain radius in a roadblock procedure is not before us.

does not warrant reasonable suspicion that the operator is involved in criminal activity. Under the government's view, every citizen who turned onto a road within sight of a checkpoint, for whatever legitimate reason, would be subject to an investigative detention. This result we cannot sanction.

As a result of the illegal stop, Officer Katz learned Murphy's name. That information enabled Officer Katz to determine that Murphy had been adjudicated an habitual offender. As a fruit of the illegal stop, that information must be suppressed. *See Zimmerman*, 234 Va. at 613, 363 S.E.2d at 710. Because the information obtained during the illegal stop is the only evidence supporting his conviction of driving after having been adjudged an habitual offender, the evidence was insufficient to support Murphy's conviction. The conviction is reversed and the charges are dismissed.

*Reversed and dismissed.*

Benton, J., and Moon, J., concurred.