COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia

JOHN CURTIS MITCHELL

v.         Record No. 1775-94-2          MEMORANDUM OPINION[*]
                                  BY JUDGE ROSEMARIE P. ANNUNZIATA
COMMONWEALTH OF VIRGINIA                     AUGUST 1, 1995

            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Paul M. Peatross, Jr., Judge

        Yvonne T. Griffin for appellant.

        Leah A. Darron, Assistant Attorney General (James S.
        Gilmore, III, Attorney General, on brief), for
        appellee.


     John Curtis Mitchell (appellant) was convicted in a bench

trial of possessing cocaine in violation of Code § 18.2-250.  On

appeal, he argues that: (1) the initial stop of the car he was

driving was not supported by a reasonable, articulable suspicion

of criminal activity; (2) the subsequent pat-down was illegal;

and (3) the cocaine discovered the following day, near the scene

of the arrest, could not be sufficiently linked to him.  We

disagree and affirm the trial court's decision.

     On September 3, 1993, at approximately 8:00 p.m., Virginia

State Trooper M.G. Harris was working at Interstate 64 in

Albemarle County.  It was a holiday weekend, the traffic was

heavy and proceeding two to three miles-per-hour in a bumper-to-

bumper fashion.  A 1989 Plymouth traveling in third gear in the

left-hand westbound lane approximately fourteen feet from Harris,

        *Pursuant of Code § 17.116.010 this opinion is not
designated for publication.

caught Harris' attention because the vehicle's front seat passenger had his entire upper torso hanging out of the car window.

Upon making eye contact with Harris, the passenger made an obscene gesture towards him by extending his middle finger. The passenger, without breaking eye contact with Harris, made jamming and twisting motions with his arm and finger, and said, "Yeah, you, I'm talking to you." The passenger's eyes appeared glassy to Harris.

Harris stopped the vehicle because the passenger was behaving abnormally and appeared intoxicated, and he believed the driver was violating Code § 46.2-852.[1]

Harris asked Mitchell, the driver, for his license and registration, and the passenger for identification. Mitchell was unable to produce any kind of identification. He then told Harris that the vehicle belonged to his girlfriend. Because the two passengers in the car had become belligerent and Harris did not have backup, Harris asked Mitchell to accompany him to his police vehicle. Mitchell took off his hat, which had a marijuana leaf embroidered on it, and entered the front passenger seat of Harris' police cruiser.

Harris again asked Mitchell for his name. Mitchell then

---

[1]Code § 46.2-852 provides as follows: "[A]ny person who drives a vehicle on any highway . . . in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving."

gave him false information about his identity.  Harris advised Mitchell of his <u>Miranda</u> rights and warned him of the penalties for giving false information to a police officer.

Mitchell responded with a "furtive, quick move[ment]" with his left hand towards his left front pocket.  Believing that appellant might be reaching for a weapon, and concerned for his safety, Harris grabbed the pocket.  As soon as he grabbed the pocket, he felt a small, irregularly shaped object in the pocket.

Harris had worked approximately ten undercover assignments in jurisdictions across the Commonwealth for three and one-half years.  During his undercover assignments, he had purchased crack cocaine and handled crack cocaine between 50 and 100 times.  In addition, he had had schooling in narcotics, and had actually seen rock crack cocaine approximately 200 times.  Based on that experience and training, he told appellant the object he felt was crack cocaine.

Appellant denied having crack cocaine, and pulled papers out of the pocket to show Harris what he felt.  Harris declined appellant's explanation and reached for the pocket.  As Harris' hand touched the pocket, appellant got out of the police car, and ran across the interstate.

When appellant subsequently was apprehended, he initially claimed that he had tar hash in his pocket, but later admitted that he had had crack cocaine.  He told Harris that he had thrown it away, and demonstrated how he had thrown it.  He said, "That

3

shit is so far in the woods you'll never find it."

The police did not find the discarded packet of cocaine at the time of appellant's arrest, and several searches, including one using a police dog, failed to uncover the cocaine. Harris returned to the scene the next day, re-enacted appellant's demonstrated motion, and located a yellow ziplock baggie of cocaine. Its location had not been the focus of the searches the previous day, when police cruisers had been parked over the spot.

Appellant filed a motion to suppress the cocaine on the ground that it was the product of an unconstitutional search and seizure. The trial court denied the motion based on its finding that the initial traffic stop and subsequent seizure were lawful. Appellant now appeals from the denial of that motion.

**I.**

"`The burden is upon [appellant] to show that [the trial court's refusal to suppress], when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d. 729, 731, cert. denied, 449 U.S. 1017 (1980)). In order to justify an investigatory stop of a vehicle, an officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or recently have been involved in, some form of criminal activity. Murphy v. Commonwealth, 9 Va. App. 139, 143-44, 384 S.E.2d 125, 127-28

4

(1989).  This standard is less stringent than the probable cause standard.  Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (en banc).  Justification for stopping a vehicle does not depend on the officer's subjective intent, but on an objective assessment of the officer's actions based on the facts and circumstances known to him at the time.  Bosworth v. Commonwealth, 7 Va. App. 567, 570, 375 S.E.2d 756, 758 (1989).

To determine whether there was a reasonable suspicion justifying this investigatory stop, we must examine the totality of the circumstances from the perspective of a "reasonable police officer with the knowledge, training, and experience of the investigating officer."  Murphy, 9 Va. App. at 144, 384 S.E.2d at 128.

Harris observed appellant driving, while his passenger, who obviously was not wearing a seat-belt and appeared to be intoxicated, had his entire upper torso hanging out of the car window.  Such activity constitutes reckless driving in violation of Code § 46.2-852.  Harris' observation of a potentially intoxicated passenger with his upper body hanging out the window of a moving car provided a reasonable, articulable suspicion of criminal activity.  The trial court did not err in denying appellant's motion to suppress based on the challenge to the stop of the car.

## II.

Where a law enforcement officer has made an investigative

5

stop and believes the suspect stopped "'may be armed and presently dangerous,' the officer may conduct a limited pat-down search for weapons." Peguese v. Commonwealth, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (en banc) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), cert. denied, 465 U.S. 1104 (1984)). In determining whether the person stopped is dangerous, an officer may consider any suspicious conduct of the person. Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 86-87 (1987). The officer is entitled to view the circumstances confronting him in light of his training and experience. Terry v. Ohio, 392 U.S. 1, 27 (1968).

Furthermore, when an officer is properly conducting a frisk for weapons and during such frisk feels an object whose identity is immediately apparent to him as contraband, the officer may seize the item. Minnesota v. Dickerson, 113 S. Ct. 2130, 2137 (1993). See Ruffin v. Commonwealth, 13 Va. App. 206, 208, 409 S.E.2d 177, 179 (1991).

In this case, the police officer had ample grounds for believing the appellant might have been armed and presently dangerous. When Harris asked appellant for identification, appellant did not produce it. Harris then asked appellant to accompany him to the police cruiser because of the increasing belligerence of the other two passengers in appellant's car. Once inside the cruiser, appellant gave Harris false information. Upon being advised of his constitutional rights and the penalty

6

for giving false information, appellant made a furtive, quick move for the front pocket of his pants. Harris grabbed the pocket to prevent appellant from drawing a weapon.

As a result of his pat-down, Harris immediately identified the object in appellant's pocket as crack cocaine, utilizing his training and experience. Having properly concluded that the object was contraband, Harris was entitled to seize it. The seizure of the crack cocaine which occurred the following day, thus, did not violate appellant's Fourth Amendment rights.

## III.

The crack cocaine, properly seized, was also properly admitted by the trial court. "Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted." Coe v. Commonwealth, 231 Va. 83, 87-88, 340 S.E.2d 820, 823 (1986).

The baggie of crack cocaine found on the roadside was relevant to the issue of whether the appellant possessed cocaine in violation of Code § 18.2-250. Harris felt crack cocaine in appellant's pocket, but appellant fled before Harris could seize it. Thereafter, appellant admitted possessing cocaine, stated how and where he had thrown it and told the police that they would never find it. Furthermore, the unique, yellow ziplock baggie containing cocaine found by Harris the following day was identical to the baggie found in appellant's car. Harris testified that in his years as an undercover officer he had never

7

before seen yellow ziplock baggies used in drug distribution. Finally, appellant recognized both baggies and claimed that they both belonged to his passenger.

The fact that the baggie sat on the roadside until the following day and thus was subject to possible contamination goes to the weight, rather than the admissibility, of the evidence. See Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990). The trial court did not err in admitting the evidence.

The judgment of the trial court is affirmed.

Affirmed.