## CIRCUIT COURT OF THE CITY OF STAUNTON

Commonwealth of Virginia

    v.

Douglas James Kelly

November 18, 1998

BY JUDGE HUMES J. FRANKLIN, JR.

The Court has now had the opportunity to review the facts and applicable case law with respect to the issues raised in the suppression hearing. The following is the opinion of the Court with respect to the same.

The issues raised at the hearing are as follows:

(1) Whether the driver's actions constituted a reasonable, articulate suspicion for a traffic stop by the Officer?

(2) May the Officer testify that the defendant took the field alka-sensor, and is that testimony admissible to show that there was sufficient basis for the arrest, as opposed to simply testifying that it was available and offered?

(3) Whether merely the strong odor of alcohol, the glassy eyes, and offering of the field alka-sensor was sufficient probable cause for an arrest without other field tests (e.g., manual dexterity tests such as heel to toe walking, standing on one foot, etc.)?

The following represents a brief statement of the facts as presented at the evidentiary hearing.

On October 29, 1998, Officer Chris Kincheloe (hereinafter referred to as "Officer") testified that on April 11, 1998, as he was turning from Beverley Street onto Jefferson Street while on routine patrol, he observed a vehicle stopped in the right hand lane headed in the direction of Beverley Street, letting two passengers exit the rear of the vehicle. The driver and one passenger then returned to the vehicle and proceeded down Jefferson Street, making a left on Beverley. It was the Officer's testimony that as the vehicle,

driven by Mr. Kelly, made a left onto Beverley, he turned into the path of an oncoming vehicle headed in a southerly direction on Jefferson, and that if the vehicle headed in a southerly direction on Jefferson had not slowed or almost stopped, there would have been a collision. Officer Kincheloe then followed the vehicle operated by the defendant, Kelly, for .3 of a mile and activated his blue lights.

When approaching Mr. Kelly's vehicle, the Officer testified that he noticed a strong odor of alcohol emanating from Kelly and that Kelly's eyes were glassy. There was some question raised, both on direct and cross-examination, as to whether or not a stagnant gaze test was administered by the Officer. The Officer testified that the field alka-sensor test was available and offered to the defendant. The Officer stated that he placed the defendant under arrest for driving under the influence. After placing the defendant under arrest, a pat-down search of the defendant revealed a bag of marijuana.

The Officer then placed the defendant in the back of the cruiser and approached the vehicle driven by the defendant. Under the front driver's seat, the Officer found a white packet that later tested positive for cocaine. The Officer testified that he then went back to his cruiser and showed the package to the defendant, Kelly, and asked if this was his package, to which Kelly responded in the affirmative. Additionally, a subsequent search revealed another packet of white powder, later testing positive as cocaine, found under the passenger's seat, and once again Kelly was asked by the Officer who was the owner of the packet, and Kelly responded that it was his.

The availability and offering, even if administered, of the field alka-sensor test is admissible in a suppression hearing. The Officer was justified in making the initial traffic stop of the defendant's vehicle. The Officer had probable cause for placing defendant under arrest for driving under the influence. The marijuana and cocaine were properly obtained.

"In order to justify any investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." *Calloway v. Commonwealth*, No. 0805-96-3, 1997 WL 191309, at *1 (Va. App. April 22, 1997) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 441 (1994) (citing *Murphy v. Commonwealth*, 9 Va. App. 139, 143-44 (1980))). "In determining whether an 'articulable and reasonable suspicion' justifying an investigatory stop of a vehicle exists, the court must consider 'the totality of the circumstances' — the whole picture." *Id.* (quoting *Murphy*, 9 Va. App. at 144 (quoting *United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989))).

In the present case, the Officer observed the defendant allow two passengers exit the vehicle while in a traffic lane and then observed defendant nearly cause a collision. Unlike DUI cases where the issue was whether a certain amount of "weaving" or erratic speed is sufficient to allow an officer to stop a vehicle, the present circumstances gave the Officer a sufficient reason to stop the vehicle. When the defendant narrowly avoided an accident, thanks to the awareness and care of the driver coming in the opposite direction, the Officer had witnessed a traffic violation. See Va. Code Ann. § 46.2-825 (Michie 1998) ("Left turn traffic to yield right-of-way") and Va. Code Ann. § 46.2-852 (Michie 1998) ("Reckless driving"). At this point, the Officer was justified in making the traffic stop, not only for the dangerous conduct by the defendant, but also because a reasonable inference existed that the defendant was not exercising due care because of an existing condition such as an inability to judge distance and speed, indicative of driving under the influence.

Although whether a lawful traffic stop was made was not specifically at issue, the court in *Harris v. Commonwealth*, 27 Va. App. 554 (1998), addressing Fourth Amendment issues arising after a lawful traffic stop has been made, did not take issue with a trooper's stop of defendant's vehicle because of speeding and improper lane changes. Both the case law and common sense dictate a rule that when a police officer observes conduct that is illegal or dangerous, he or she is justified in stopping a vehicle.

The Court in *Calloway* broke the case into two clear analytical parts. No. 0805-96-3, 1997 WL 191309 (Va. App. April 22, 1997). First, it addressed whether the initial stop of the defendant's car was proper. Second, it addressed whether the investigation of the defendant for driving under the influence was proper. The facts in *Calloway* involved a woman causing a disturbance at a residence that someone reported to the police. The responding officer was told by the dispatcher that the individual was an African-American female and driving a "small" car. The court, without going into detailed speculation about what may or may not have been going on, simply stated:

> Although [the officer] did not know the exact nature of the "problem" at the residence, the fact that the person at the front door was causing a disturbance at an unusually early hour and that this disturbance provoked an occupant of the house to call the police provided an objective basis for the [officer] to suspect that criminal activity was afoot.

*Id.* The court then concluded that the officer was justified in investigating the defendant for operating her vehicle while intoxicated. There existed a

"reasonable articulable suspicion" because the officer detected the odor of alcohol on the defendant's person, the defendant admitted to having three beers, and the officer had a reasonable suspicion that the defendant had been engaged in unusual conduct (yelling and screaming in the pre-dawn hours). *Id.*

In sum, the Officer was justified in stopping Kelly's vehicle. The facts that led to Kelly's arrest developed subsequent to a lawful traffic stop.

Although § 18.2-267 governs the admissibility of a preliminary breath analysis at trial, the current posture is pre-trial suppression of evidence. The court in *Stacey v. Commonwealth* held "that 'prosecution,' as it is used in Code § 18.2-267, does not include a pre-trial suppression hearing to determine the legality of the arrest; 'prosecution' as contemplated in this statute is limited to the proceedings devoted to 'determining the guilt or innocence of a person charged with a crime'." 22 Va. App. 417, 423 (1996) (quoting *Black's Law Dictionary* 1221 (6th ed. 1990)). "Therefore, the trial court did not err by admitting the results of the alka-sensor test at the pre-trial hearing to determine probable cause to arrest, which is the sole purpose for administering the test." *Id.*

The Officer may testify regarding the field alka-sensor so that the Court may properly decide whether probable cause existed for the arrest of Kelly.

The Virginia Supreme Court, in *Schaum v. Commonwealth*, stated:

> Probable cause, as the very name implies, deals with probabilities. These are not technical; they are factual and practical considerations in everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

215 Va. 498, 500 (1975) (citing *Draper v. United States*), 358 U.S. 307, 313, 79 S. Ct. 329, 333 (1959); *Oglesby v. Commonwealth*, 213 Va. 247, 250 (1972)). A year later, the court announced that "[i]n determining whether probable cause exists, courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." *Hollis v. Commonwealth*, 216 Va. 874, 877 (1976) (citation omitted).

In this case, there are several factors that provide a basis for probable cause to arrest: (1) Kelly's failure to safely operate a motor vehicle as shown

by the near collision; (2) the strong odor of alcohol emanating from Kelly's person; (3) the glassy eyes of Kelly; and (4) the availability of the field alka-sensor. The fourth factor is problematic because the record does not reflect whether Kelly took the preliminary breath test and either "passed" it or "failed" it, or if the test was offered and refused by Kelly. If possible, the fourth factor must be factually developed because a completed test would be more conclusive concerning whether probable cause existed, one way or the other. A refusal to take the field alka-sensor would seem to support the existence of probable cause to arrest.

Unless Kelly took the field alka-sensor and no traces of alcohol were found, the case law seems to support a finding that probable cause existed. The Officer's failure to give a field sobriety test, although making this issue a much closer call, does not defeat the existence of probable cause. In *Calloway*, the court found that probable cause existed based on the odor of alcohol on the defendant's person, the "glassy, bloodshot" appearance of the defendant's eyes, the defendant's slow and slurred speech, and defendant's "unsteady and wobbly" performance of the field sobriety tests. No. 0805-96-3, 1997 WL 191309, at *3 (Va. App. April 22, 1997).

However, in *Stacey v. Commonwealth*, 22 Va. App. 417 (1996), although the defendant performed the field sobriety test "well," produced her license and registration without difficulty, and exited her vehicle without difficulty, the trial court's finding of probable cause was proper because the arresting officer witnessed defendant's vehicle crossing over the white line separating the travel lane from the paved shoulder, the officer detected an odor of alcohol on the defendant's person, the defendant's eyes were bloodshot, the defendant admitted to having four drinks over the course of the evening, and the field alka-sensor registered positive for alcohol.

In *Cogan v. Commonwealth*, No. 1751-96-2 WL 273960 (Va. App. May 27, 1997), the issue was whether an unlawful seizure occurred when the officer confronted the defendant. When the defendant was arrested for DUI, the officer based his judgment on two factors: a "strong" odor of alcohol emanating from the defendant and that the defendant had "bloodshot eyes." *Id.* at *1. The court stated: "During appellant's presentation of the license and registration to [the officer], [the officer] observed the signs of appellant's intoxication. Thus, when the seizure occurred, that is, when [the officer] received the documents and retained them, he had at least reasonable, articulable suspicion to support the seizure." *Id.* at *2.

The court in *Wohlford v. Commonwealth*, 3 Va. App. 467, 472 (1986), succinctly stated "The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided

probable cause for the arrest." Based on what Officer Kincheloe had observed, he was exercising "reasonable caution" in concluding that Kelly had been driving under the influence and probable cause existed to make the arrest.

Assuming that the Officer was following the correct procedures in patting down Kelly and searching the vehicle following Kelly's arrest, the evidence was legally obtained. As discussed above, a valid arrest had been made, and the marijuana and cocaine were valid "fruits" flowing from the arrest.

The initial traffic stop was proper, and there existed probable cause to place Kelly under arrest. The offering, availability, and administration of a field alka-sensor test is admissible in this context.