Tuesday        26th

        March, 2002.


William Damond Cheeks,                                      Appellant,

 against        Record No. 1889-00-2
                Circuit Court Nos. 00-911-F through 00-913-F

Commonwealth of Virginia,                                  Appellee.


                    Upon a Rehearing En Banc

   Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
    Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and
                            Agee


        Carolyn V. Grady (Carolyn V. Grady, P.C., on
        brief), for appellant.

        Eugene Murphy, Assistant Attorney General
        (Randolph A. Beales, Attorney General, on
        brief), for appellee.


        By memorandum opinion dated October 16, 2001, a

divided panel of this Court reversed the judgment of the trial

court.  We stayed the mandate of that decision and granted

rehearing en banc.

        Upon rehearing en banc, it is ordered that the October

16, 2001 mandate is vacated, and the judgment of the trial court

is affirmed for the reasons set forth in the panel dissent.  The

appellant shall pay to the Commonwealth of Virginia thirty

dollars damages.

Judges Benton and Clements dissent for the reasons set forth in the majority opinion of the panel.

It is ordered that the trial court allow counsel for the appellant a total fee of $925 for services rendered the appellant on this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

The Commonwealth shall recover of the appellant the amount paid court-appointed counsel to represent him in this proceeding, counsel's costs and necessary direct out-of-pocket expenses, and the fees and costs to be assessed by the clerk of this Court and the clerk of the trial court.

This order shall be certified to the trial court.

Costs due the Commonwealth
 by appellant in Court of
 Appeals of Virginia:

    Attorney's fee   $925.00  plus costs and expenses


                         A Copy,

                            Teste:

                            Cynthia L. McCoy,
Clerk

                         By:

                            Deputy Clerk




                         -

                                        Thursday        6th

          December, 2001.


William Damond Cheeks,                                    Appellant,

  against      Record No. 1889-00-2
              Circuit Court Nos. 00-911-F through 00-913-F

Commonwealth of Virginia,                                Appellee.

              Upon a Petition for Rehearing En Banc

                      Before the Full Court


        On October 30, 2001 came the appellee, by the Attorney

General of Virginia, and filed a petition praying that the Court

set aside the judgment rendered herein on October 16, 2001, and

grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on October 16,

2001 is stayed pending the decision of the Court en banc, and

the appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. The appellee shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter. It is further ordered that

                              -

the appellee shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

                        A Copy,

                              Teste:

                                    Cynthia L. McCoy, Clerk

                              By:

                                    Deputy Clerk

                                    -

Present: Judges Benton, Frank and Clements
Argued at Richmond, Virginia


WILLIAM DAMOND CHEEKS

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1889-00-2        JUDGE JEAN HARRISON CLEMENTS
                                         OCTOBER 16, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      James B. Wilkinson, Judge

            Carolyn V. Grady (Carolyn V. Grady, P.C., on
            brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     William Damond Cheeks was convicted in a bench trial of

possession of cocaine with intent to distribute in violation of Code

§ 18.2-248, possession of a firearm while possessing cocaine in

violation of Code § 18.2-308.4, and possession of a firearm by a

convicted felon in violation of Code § 18.2-308.2.  On appeal, he

contends the trial court erred in denying his motion to suppress the

gun and cocaine because they were the products of a seizure that

violated his Fourth Amendment rights.  We agree and reverse the

convictions.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

Viewed in the light most favorable to the Commonwealth, the party prevailing below, see Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), the evidence established that, on April 6, 2000, Richmond City Police Officer Fred Bates was on patrol when he received a radio call that a man had hit a woman in the knee with the butt of a gun in the 3400 block of Semmes Avenue. The call reported that the suspect's last name was "Cheeks" and that he had run into Antonz's Barbershop. No other information regarding the suspect was provided.

Officer Bates proceeded to Antonz's Barbershop, located at 3412 Semmes Avenue, and went inside. There, he saw two people getting a haircut and two others waiting to get a haircut. Bates, who was in uniform, informed the barber that he was investigating a crime that had been committed by an armed suspect and asked him if anybody had run into the barbershop "in the past couple minutes." The barber said that no one had. No one in the barbershop, according to Bates, appeared to be out of breath. Bates did not tell those in the barbershop that the suspect's last name was "Cheeks."

- 6 -

Bates asked the two customers waiting for haircuts for identification, and they both provided it to the officer. Bates then asked one of the men getting a haircut for identification, and he produced it. Finally, Bates asked Cheeks, the other man getting a haircut, what his name was and to see his identification. Cheeks, who, according to Bates, "was halfway through his haircut," gave the officer a name other than Cheeks and informed him that he did not have any identification.

Bates then stood beside Cheeks, approximately three feet away, for two to three minutes, "wait[ing] for [Cheeks] to get his haircut." Bates testified he did not know Cheeks at that time and had no reason to think Cheeks had given him a false name. He added that Cheeks was not engaged in criminal conduct but was merely getting a haircut. However, because he had received a report that an armed suspect had entered the barbershop and because Cheeks had not produced identification, Bates stood next to Cheeks "just in case he did have a gun."

At the conclusion of his haircut, Cheeks started walking quickly toward the front door of the barbershop. Bates asked him, "Hey buddy, can I talk to you outside." Cheeks replied, "No problem," and they went outside. Bates told Cheeks he was investigating "an armed suspect call" and asked him if he could pat him down for the safety of them both. Cheeks responded affirmatively. Bates asked Cheeks to turn around. Cheeks turned around to face the door of the barbershop, put his hands up, and ran into the barbershop.

Officer Bates pursued Cheeks and tackled him inside the barbershop. Cheeks got up and started running again. Bates again tackled him inside the barbershop and hung on while Cheeks dragged him through the barbershop toward the back door. Freeing himself, Cheeks fled out the back door of the barbershop, with Bates in pursuit. The back door opened onto Forest Hill Avenue. After crossing Forest Hill Avenue, Cheeks ran behind a building, where Bates, "just a couple feet behind him," saw Cheeks throw a gun against a brick wall as he ran. Eventually, Bates and another officer apprehended Cheeks. They found cocaine on his person and retrieved the gun he had thrown.

Prior to trial, Cheeks moved to suppress the cocaine and gun, arguing that their discovery stemmed from the unlawful seizure of his person. The trial court denied the motion, ruling that the encounter was consensual until Cheeks fled, at which point the officer had reasonable suspicion to detain him.

## II. ANALYSIS

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve

questions of both law and fact and are reviewed de novo on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed de novo on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

Cheeks contends on appeal that he was effectively seized by Officer Bates in Antonz's Barbershop when the officer, after telling the barber that he was investigating a crime, stood next to Cheeks for several minutes waiting for the barber to finish cutting Cheeks' hair. Cheeks further contends the seizure violated his Fourth Amendment rights because it was not based on a reasonable, articulable suspicion. Thus, he concludes, the trial court erred in refusing to suppress the gun and cocaine, the discovery of which derived from the police's unlawful seizure of him.

The Commonwealth argues that Officer Bates seized Cheeks only after Cheeks ran away from the officer. Up to that point, the Commonwealth asserts, the encounter was consensual.

A. Seizure

Encounters between the police and citizens "generally fall into one of three categories." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

Id. (citations omitted).

Thus, a detention that is not consensual is a seizure requiring Fourth Amendment scrutiny. See id. at 198-99, 487 S.E.2d at 261-62; Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992). "An encounter is not consensual 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Piggott v. Commonwealth, 34 Va. App. 45, 49, 537 S.E.2d 618, 619 (2000) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). "A seizure occurs when an individual is either physically restrained or has submitted to a show of authority" by the police. McGee, 25 Va. App. at 199, 487 S.E.2d at 262.

> A consensual encounter occurs when police officers approach persons in public places to ask them questions, provided a reasonable person would understand that he or she could refuse to cooperate. Such encounters need not be predicated on any suspicion of the person's involvement in wrongdoing, and remain consensual as long as the citizen voluntarily cooperates with the police.

Payne, 14 Va. App. at 88, 414 S.E.2d at 870 (internal quotations and citations omitted).

However, a consensual encounter loses its consensual nature and becomes a seizure for Fourth Amendment purposes when, in light of the totality of the circumstances encompassing the encounter, a reasonable person would have believed that he or she was no longer free to walk away from the police, disregard their questions, ignore or decline their requests, or otherwise end the encounter with them. See Piggott, 34 Va. App. at 49, 537 S.E.2d at 619; Payne, 14 Va. App. at 88-89, 414 S.E.2d at 870. For a seizure to occur, "[t]here must be some coercion or show of force or authority by the officer, measured by objective standards, that would cause a person so situated reasonably to have believed that he or she was required to comply with the officer's request." Commonwealth v. Satchell, 15 Va. App. 127, 131, 422 S.E.2d 412, 414-15 (1992).

Applying these principles to the circumstances of this case, we find that the encounter between Officer Bates and Cheeks was initially consensual. Upon entering the barbershop, Bates, who was in uniform, told the barber merely that a crime involving an armed suspect had been committed. He did not mention the suspect's last name. He then asked Cheeks, along with the other customers in the barbershop, for his name and identification. Cheeks voluntarily gave Bates a name (not "Cheeks") and informed the officer that he did not have identification. "An encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and

- 11 -

states that he is conducting a[n] . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter."  McGee, 25 Va. App. at 199, 487 S.E.2d at 262.

We further find, however, that the encounter between Bates and Cheeks lost its consensual nature when the officer, having made it known that he was investigating a crime involving an armed suspect and having been told by Cheeks that he did not have identification, stood beside Cheeks for two to three minutes waiting for him while the barber finished cutting his hair.  That action, we conclude, conveyed the unmistakable message to Cheeks that Bates was no longer conducting a general investigation but had made Cheeks the focus of his investigation.

As we noted in Langston v. Commonwealth, 28 Va. App. 276, 282, 504 S.E.2d 380, 383 (1998), "[t]he circumstances of the encounter may indicate, even without physical restraint, a suspect is not free to leave."

> [W]hen a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave.

McGee, 25 Va. App. at 200, 487 S.E.2d at 262.

Here, even though Bates did not inform those in the barbershop that the last name of the suspect was "Cheeks" or directly accuse Cheeks of committing the crime, we find that, by standing next to

- 12 -

Cheeks, and Cheeks alone, while Cheeks got his hair cut, Bates specifically identified Cheeks as a suspect and implicitly informed him that he was being detained to investigate his criminal activity. Such a show of authority, we believe, would cause a reasonable person in Cheeks' position to have reasonably believed that he or she was not free to terminate the encounter with the officer and walk away.

We conclude, therefore, based on our de novo review of all of the circumstances surrounding the encounter, that the evidence proves that Cheeks was seized under the Fourth Amendment when Officer Bates stood beside him in the barbershop.

## B. REASONABLE SUSPICION

"In order to justify such a seizure, an officer must have a 'reasonable and articulable suspicion of criminal activity on the part of the defendant.'" Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (quoting Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989)). "[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." Hayes v. Florida, 470 U.S. 811, 816 (1985). However, the justification for the seizure "must be more than an 'inchoate and unparticularized suspicion or hunch.'" McGee, 25 Va. App. at 202, 487 S.E.2d at 263 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968) (internal quotes omitted)). In reviewing whether an officer had reasonable suspicion to justify the seizure, we must consider the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

Here, the evidence established that Officer Bates received information from his radio dispatch that an assault with a gun had been committed in the 3400 block of Semmes Avenue and that the suspect, a man named Cheeks, had run into Antonz's Barbershop, located in that block. No other information regarding the suspect

was provided. Likewise, no information was transmitted as to when the alleged assault had occurred or when the suspect had run into the barbershop. Bates testified that he "thought it was just right then."

Based on the information from dispatch, Bates went to the barbershop. Nothing in the record indicates the time of the radio call, Bates' location when he received the call, or how long it took him to arrive at the barbershop.

Inside the barbershop, Bates found the barber and four customers. Cheeks, along with another customer, was getting his hair cut, while the two other customers waited. Cheeks was "halfway through his haircut." None of the customers was out of breath. In response to Bates' inquiry, the barber told Bates that no one had run into the shop in "the past couple minutes."

When Bates confronted Cheeks to determine his identity, Cheeks readily told the officer his name, which was not "Cheeks," and said he had no identification. Bates testified that he did not know Cheeks and had no reason to think Cheeks had given him a false name. He also testified that Cheeks was not engaged in criminal activity, and there was no indication that Cheeks acted in a suspicious manner.

On these facts, we find that Officer Bates lacked an objectively reasonable or articulable basis for suspecting that Cheeks was or had recently been engaged in criminal activity. Bates had no description of the suspect and observed nothing that suggested that Cheeks was the suspect. At most, Bates had an inchoate and unparticularized

suspicion or hunch that Cheeks might have been the suspect because he was unable or unwilling to provide identification. Such a hunch, however, does not rise to the level of reasonable suspicion necessary to justify the seizure. See McGee, 25 Va. App. at 202, 487 S.E.2d at 263.

We conclude, therefore, based on our de novo review of the totality of the circumstances, that, because the circumstances provided Bates no objective basis for suspecting Cheeks was or had been engaged in criminal activity, Cheeks was seized in violation of his Fourth Amendment rights. Hence, we hold that the trial court erred in denying Cheeks' motion to suppress the gun and the cocaine, both of which were discovered as a direct consequence of the unlawful detention. See Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 747-48 (1974) (noting that exclusionary rule bars admission of "derivative evidence" discovered as a result of an unlawful search or seizure).

Accordingly, we reverse Cheeks' convictions and dismiss the charges.

Reversed and dismissed.

Frank, J. dissenting.

I would find the police did not seize appellant while he was seated in the barber chair.

A seizure occurs "only when, by means of physical force or a show of authority, [a person's] freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." United States v. Mendenhall, 446 U.S. 544, 553 (1980). "[I]f, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," then a seizure has occurred. Id. at 554.

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See Terry v. Ohio, [392 U.S. 1, 19 n.16 (1968)]; Dunaway v. New York, 442 U.S. 200, 207, and n. 6; 3 W. LaFave, Search and Seizure 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

Id. at 554-55. See also Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996).

Officer Bates was in uniform. However, he was the only police officer in the barbershop. He did not display his gun. He did not touch appellant. The officer did not tell appellant he had to remain in the chair and did not tell appellant he was a suspect in a crime.

- 17 -

Nothing in the record suggests Bates' tone of voice indicated compliance was mandatory.

The officer did remain in the shop, approximately three feet away from appellant while the barber cut his hair. I believe this circumstance is similar to Clarke v. Commonwealth, 32 Va. App. 286, 527 S.E.2d 484 (2000). In Clarke, an officer approached a stopped vehicle and asked the passenger, Clarke, some questions. We found the police are "permitted to ask [a suspect] questions without violating his Fourth Amendment rights." Id. at 303, 527 S.E.2d at 492.

Officer Bates simply asked appellant for identification. The officer then stood aside, asked nothing, and waited for the barber to finish cutting appellant's hair. Appellant was already seated in the chair when approached by the officer. Appellant continued to sit there until the haircut was completed and then started to leave the shop. The only "restraint" resulted from appellant's desire to remain where he was and get his hair cut.

I do not believe a "show of authority" occurred nor would a reasonable person feel seized by anything Officer Bates did. Therefore, I would affirm the convictions.