704

CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Furnel David Wright

December 2, 2002

Case No. (Criminal) 14820

BY JUDGE BURKE F. MCCAHILL

This case was heard on November 26, 2002, on the defendant's Motion. to Suppress.

*Facts*

On December 14, 2001, Deputy Adams of the Loudoun County Sheriff's Department, while in uniform, received a dispatch at 2:45 a.m. that there was suspicious activity at the Eckerd Drug Store in Sterling, Virginia. Deputy Adams had seven years police experience, including narcotics undercover work. The information received from the dispatch was that there were males hanging out and going in and out of the all-night drug store without making purchases. No information was obtained as to the identity or quality of the individual providing the information. Arriving in the well-lit parking area, the police Deputy approached from around the corner with his lights turned off.

The Deputy observed the defendant standing outside the store in the parking area next to the driver's side of a vehicle that was in the parking area but not in a space. The vehicle appeared to contain three individuals. The Deputy observed the defendant leaning into the vehicle.

The Deputy believes that he observed that the defendant took something from a passenger. Based on the shape, size, and color he believed it was currency. The defendant had his left arm leaning on the driver's side window, which was down, and his right hand in his pocket. The Deputy exited about one and one half car lengths away, and the defendant turned and put his left hand in his pants pocket. The Deputy commanded the defendant to remove his hands from his pocket. The defendant did not comply. The Deputy repeated his command and took a step toward the defendant repeating his command, including that the defendant should step towards the police vehicle but the defendant did not respond. When the Deputy got within reach of the defendant, the defendant took one step towards him. The Deputy put his hand out to help him move towards the police vehicle but the defendant turned and ran.

The Deputy grabbed the defendant's jacket, and the defendant's arms came out of the jacket leaving the Deputy with the jacket. The Deputy followed the defendant running and observed him discard a package, which the defendant seeks to suppress. Ultimately the defendant was stopped and taken into custody.

Martha Ahmadi, a friend of the defendant, testified that she was in a car in the parking lot adjacent to the interaction and observed the entire transaction. She testified that the Deputy in fact commanded that the defendant get his hands out of his pockets and put them on the car. The defendant responded by saying "For what?". She testified that she only observed the defendant standing next to the car talking to the occupants of the car. The defendant made a facial expression after receiving the command to the person in the car. The Deputy approached and grabbed him from behind at which time the defendant fled. She testified that the defendant did not have his hands in his pocket and she did not observe any transaction in the vehicle.

## Discussion

First, I do not believe that this can be characterized as a voluntary police-citizen encounter. This was not a situation where a Deputy approached a citizen in a public place to ask questions. Nor could one objectively conclude that the defendant could refuse to cooperate and was free to leave. The Deputy received information of suspicious activity and, as soon as he arrived on the scene, he acted immediately. The defendant received explicit commands from the uniformed Deputy. Had this been a voluntary police-citizen encounter, the actions of the defendant in the course of the encounter

may have been considered by the Deputy if he moved beyond a consensual encounter to an investigatory detention.

Second, it is not necessary to determine whether the defendant taking a step toward the Deputy was a response to his command and therefore a submission to the Deputy's "show of authority." In this case, there was a seizure because there was a touching by the police Deputy even though after the application of this slight force, the defendant fled. A seizure is a "laying on of hands or application of physical force to restrain movement even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991). Under the objective test in *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980), a reasonable person would have believed he was not free to leave in view of these circumstances.

Third, having concluded that this was not a voluntary police citizen encounter and that a seizure occurred, an analysis of whether the Deputy had reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), is required. The totality of the circumstances viewed objectively through the eyes of a reasonable police Deputy with the knowledge, training, and experience of the Deputy must be considered to determine if there is an articulable and reasonable suspicion that the defendant was involved in unlawful activity. *Murphy v. Commonwealth*, 9 Va. App. 139, 384 S.E.2d 125 (1989).

A reasonable suspicion is more than an unparticularized suspicion or hunch. Even if the Court discounts the testimony of Ms. Ahmadi as biased and accepts the police Deputy's testimony, these facts, when viewed objectively, do not create a reasonable suspicion.

The dispatch from the sheriff's office derives from an unknown source. The dispatch given to the Deputy did not suggest unlawful activity. No information in the dispatch connects the defendant's observed conduct with the information provided by the source. The defendant was in a well-lit parking area where he had a right to be, speaking with an individual(s) in a vehicle. Although this occurred in the early morning, the retail establishment was an all-night drug store open for business at the time. The Deputy did not describe this as a high crime area where drugs were routinely sold, nor was he able to identify the occupants of the vehicle or the defendant as individuals known to him in some capacity. The Deputy believed the defendant received something that appeared to be currency from an occupant of the vehicle. This observation does not necessarily lead to the inference that criminal activity has occurred or is imminent. There were no series of hand-to-hand transactions, nor was the defendant observed handing anything to the occupants. There

were no suspicious movements by the defendant, nor was there any evidence that he was in any way armed or dangerous.

Even affording deference to the experience of this Deputy, I believe that this is merely lawful conduct. Notwithstanding his good faith subjective belief, I do not find that the Commonwealth has met its burden of proving that the seizure did not violate the defendant's Fourth Amendment rights. Therefore, the Motion to Suppress is granted and the items seized in the subsequent arrest are suppressed.