**Salem**

LOWELL CLIFTON STROUD

v.

COMMONWEALTH OF VIRGINIA

No. 1114-86-3

Decided August 2, 1988

634

---

COUNSEL

Jonathan S. Kurtin (Lutins and Shapiro, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

---

OPINION

KEENAN, J. — Lowell Clifton Stroud was convicted in a bench trial of operating a motor vehicle after being adjudged an habitual offender. Code § 46.1-387.8. The issues presented in this appeal are: (1) whether the roadblock established by the Virginia State Police was unconstitutional; and (2) whether certain statements made by Stroud were obtained in violation of his fifth amendment rights. We affirm Stroud's conviction based on our finding that after he turned to avoid the roadblock, the police had an articulable and reasonable suspicion that justified a "stop" of his vehicle. We also find that Stroud's statements were not obtained in violation of his fifth amendment rights. Since Stroud was not stopped at the roadblock, we do not decide whether it was constitutionally permissible.

I.

On August 28, 1986, the trial court conducted a pretrial suppression hearing. Trooper L.C. Isley testified that on March 9, 1986, he established a roadblock on Route 604 to check drivers' licenses, registrations, inspection stickers, and equipment violations. After checking a stopped vehicle at the roadblock, he saw an older model Ford van approach within 100 to 150 feet of the roadblock. Isley observed the van make a U-turn and drive away

from the roadblock.

Isley further testified that based on his eleven years experience with the state police, he suspected from the driver's conduct that he was either unlicensed or otherwise in violation of the law. Isley got into his vehicle and followed the van, but lost sight of it as it negotiated a slight curve. After Isley rounded the same curve, the van was not in sight. He then turned and proceeded back toward the roadblock.

On his return, Isley spotted the van he was pursuing parked in a private driveway. He turned into the driveway and parked behind the van. No one was in the van at this time. A few minutes later, Isley observed Stroud coming out of the house. Isley testified that he asked Stroud whether he was the driver of the van and Stroud said that he was. Isley then asked Stroud why he had turned around when he approached the roadblock. Stroud replied that his operator's permit had been revoked for ten years. Isley next asked Stroud whether he was an habitual offender. Stroud replied yes. At this time, Isley ran a computer check through the Department of Motor Vehicles that confirmed Stroud was an habitual offender. He then arrested Stroud and advised him of his *Miranda* rights. Stroud did not request an attorney or refuse to answer questions.

Isley testified that on the way to the magistrate's office, he asked Stroud whether he lived at the house where he was arrested. Stroud stated that he did not. When asked whether he knew the people who lived there, Stroud replied that he did not but had stopped there to call his wife. Stroud stated that he had been on his way to purchase groceries, and that he had "messed up."

After the close of the evidence at the suppression hearing, Stroud argued that the statements that he made to Isley before his arrest were inadmissible because they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). He argued that since his van was blocked by Trooper Isley's vehicle, he was "in custody" for *Miranda* purposes and should have been given *Miranda* warnings before being questioned. Stroud also argued that Isley did not have a reasonable suspicion to stop him and that the roadblock was unconstitutional. The trial court overruled his motion to suppress.

At trial, Stroud stipulated to the evidence given at the suppression hearing and preserved his prior objections regarding its admissibility. At the conclusion of the trial, Stroud conceded that the evidence before the court was sufficient to sustain a conviction, and renewed his earlier evidentiary objections. The trial court found Stroud guilty and sentenced him to two years' incarceration.

## II.

Initially, we hold that since Stroud was not stopped at the roadblock, its constitutionality is immaterial to Stroud's detention or arrest. We make this ruling based on the evidence that after approaching within 100 to 150 feet of the roadblock, Stroud turned his van and drove in the opposite direction. He then stopped the van of his own volition in a private driveway.

■ Assuming *arguendo* that a "stop" occurred when Trooper Isley parked behind Stroud's van in the driveway, we find that Isley had an articulable and reasonable suspicion that justified such a stop. In *Delaware v. Prouse*, 440 U.S. 648 (1979), the Supreme Court detailed the fourth amendment requirements that must be met in order to stop an automobile and detain its occupants. The Court held that "except in those situations in which *there is at least articulable and reasonable suspicion* that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law," the fourth amendment prohibits the stopping of a vehicle unless it is done pursuant to methods that restrict the unconstrained exercise of discretion on the part of the police. *Id.* at 663 (emphasis added); *see Lowe v. Commonwealth*, 230 Va. 346, 349-50, 337 S.E.2d 273, 275 (1985), *cert. denied*, 475 U.S. 1084 (1986).

In this case, Trooper Isley testified that based on his eleven years' experience with the state police, Stroud's action in avoiding the roadblock indicated that he was probably unlicensed or otherwise in violation of the law. We find that this evidence satisfies the *Delaware v. Prouse* requirement that a discretionary stop of a motor vehicle be based on an articulable and reasonable suspicion of wrongdoing.

## III.

Stroud next argues that when Trooper Isley blocked his van in the driveway, he was "in custody" for *Miranda* purposes. Since he was not advised of his *Miranda* rights before making certain pre-arrest statements to Isley, Stroud contends that those statements should not have been admitted into evidence. The Commonwealth argues that Stroud was not "in custody" when he made the statements and that he voluntarily answered Trooper Isley's questions.

■ Under the facts presented, we find that Stroud was not "in custody" for purposes of *Miranda* when he made pre-arrest statements. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the U.S. Supreme Court held that a suspect must be informed of his constitutional rights before a "custodial interrogation" begins. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

■ In *Berkemer v. McCarty*, 468 U.S. 420 (1984), the Court found that persons detained pursuant to routine traffic stops are not "in custody" for *Miranda* purposes. The Court in *Berkemer* analogized a traffic stop to a *"Terry* stop." *Id.* at 439-40; *see Terry v. Ohio*, 392 U.S. 1 (1968). The Court held:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of

*Miranda.* The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of *Miranda.*

*Berkemer,* 468 U.S. at 439-40 (citations omitted).

■ In the case before us, Stroud argues that he was "in custody" for *Miranda* purposes because Isley's vehicle blocked his van's path, making him "immobilized by the Trooper's actions." We disagree. Stroud's freedom of action was not infringed to any greater extent than that of any individual during a routine traffic stop. As the Supreme Court noted in *Berkemer:*

> It must be acknowledged at the outset that a traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission. Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so.

*Id.* at 436 (citation omitted)(footnote omitted).

Every driver in Virginia is obligated to stop upon the signal of any police officer and, upon request, show that officer the vehicle's registration card and his or her driver's license. Code § 46.1-7(c).[1] We find that Stroud's "freedom of action" was not restrained to any greater extent than that of other drivers detained during routine traffic stops pursuant to Code § 46.1-7(c). We also find that the fact the interview took place on the private property of a third person did not create an intimidating circumstance greater than that of a stop alongside a highway. Isley was the only officer present on the scene, and the interview took place directly

---

[1] Code § 46.1-7(c) provides: The owner or driver of any motor vehicle, trailer, or semitrailer shall stop upon the signal of any law-enforcement officer who shall be in uniform or who shall show his badge or other sign of authority and shall, upon request, exhibit his registration card, driver's license or instruction permit or temporary driver's permit and shall write his name in the presence of such law-enforcement officer if so required for the purpose of establishing his identity.

outside the house of a third party. Further, Isley asked Stroud only three questions, all of which were directly related to his justification for the encounter. Thus, we conclude that Stroud was not "in custody" for *Miranda* purposes until he was placed under arrest by Trooper Isley, and that accordingly, his pre-arrest statements were properly admitted into evidence at trial.

For the reasons stated, we affirm the decision of the trial court.

*Affirmed.*

Koontz, C.J., and Coleman, J., concurred.