## COMMONWEALTH OF VIRGINIA

v.

## JAMES DOUGLAS EAVES

No. 0605-91-3

Decided September 20, 1991

COUNSEL

Robert H. Anderson, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

John N. Dalton, Jr. (Dalton & Duncan, P.C., on brief), for appellee.

OPINION

COLEMAN, J.—In this appeal, we consider whether a police officer who observed the operator of an automobile make a U-turn as the operator's vehicle approached within one hundred feet to one-tenth of a mile[1] of a traffic checkpoint had a reasonable basis to suspect that the operator was violating the licensing or registration regulations or was committing or had committed a criminal offense. Based on the facts observed by the officer, we hold that he did have a reasonable basis to suspect that the operator made a U-turn for the purpose of avoiding the roadblock and, therefore, was probably operating in violation of the motor vehicle regulations or had committed a criminal offense. Accordingly, we reverse the trial judge's suppression ruling that the evidence was obtained as a result of an illegal stop, and we remand the case for trial.

The Commonwealth has appealed, pursuant to Code § 19.2-398, a pretrial suppression order in which the trial court ruled that evidence that the operator of the vehicle was an habitual offender, which the officer obtained as a result of having illegally stopped the appellee's automobile, would not be admissible at trial. The trial court ruled that our decision in *Murphy v. Commonwealth*, 9 Va. App. 139, 384 S.E.2d 125 (1989), "superseded" our decision in *Stroud v. Commonwealth*, 6 Va. App. 633, 370 S.E.2d 721 (1988), and controlled this case. Relying on *Murphy*, the trial court held that, because the U-turn was legal and was not a traffic infraction, and because the officer had no other reason to suspect that the driver had done anything illegal, the stop was in violation of the fourth amendment protections as defined in *Delaware v. Prouse*, 440 U.S. 648 (1979).

The trial court misapplied our holding in *Murphy*. Our decision in *Murphy* was consistent with our holding in *Stroud* and did not overrule it. In *Murphy*, we merely elaborated on the principles from *Prouse* and applied them to the facts of that case, the same

---

[1] The record did not explain the substantial variance between the estimate of one hundred feet and one-tenth of a mile or over five hundred feet.

principles we applied in *Stroud*. In both cases, we reviewed the facts to determine whether the police officers had articulated a basis for having a reasonable suspicion that a driver turning before a traffic checkpoint was doing so to avoid detection of a traffic infraction or criminal activity.

In *Murphy*, the officer observed the operator of a vehicle make a lawful right turn three hundred fifty feet before a roadblock. We held that "a legal turn into an existing roadway prior to reaching a checkpoint, standing alone, does not warrant reasonable suspicion that the operator is involved in criminal activity." 9 Va. App. at 145-46, 384 S.E.2d at 129. However, we expressly recognized in *Murphy* that other "[f]actors as subtle as the difference between [a driver making] a U-turn 150 feet from a roadblock [as was the fact in *Stroud*] and [an operator making] a lawful turn into an existing roadway 350 feet from a roadblock may affect the determination." *Id.* at 145, 384 S.E.2d at 129. The issue is whether the officer had a reason to suspect that the turn was to avoid the checkpoint, rather than a turn that would normally have been made in the course of the operation of the vehicle without the presence of a roadblock. In *Stroud*, we held that under the circumstances of that case, the officer stated a reasonable basis to suspect the driver was unlicensed when, based on the officer's eleven years of experience, he observed the driver of a van make a U-turn within one hundred to one hundred fifty feet of the checkpoint and drive in the opposite direction only to pull into a private driveway.

In *Murphy*, we recognized that an experienced police officer may, under certain circumstances, conclude that a turn before a traffic checkpoint is for the purpose of evading a traffic check, but that officers are not justified in being suspicious of drivers who, without more, make legal turns in sight of a roadblock. Both *Murphy* and *Stroud* recognized that circumstances other than a lawful turn in sight of a roadblock must be present to justify an inference by a police officer that the driver made the turn for the purpose of avoiding the checkpoint.

■ We review the evidence on appeal from a suppression hearing in the light most favorable to the prevailing party. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Virginia State Trooper L. W. Findley was manning a traffic checkpoint on Route 11 in Pulaski County on Au-

gust 17, 1990. He observed two vehicles essentially abreast of one another approaching the checkpoint at about the same speed in the two southbound lanes. The vehicles were traveling at a lawful speed in a fifty-five mile per hour zone. Findley testified that the vehicle traveling in the left southbound lane "all of a sudden" put on his signal "right at" a turn or deceleration lane leading into a crossover, made a U-turn, and headed back in the northbound lane in the direction from which he had come. The crossover was the last place to turn before reaching the checkpoint. The deceleration lane was only about thirty-five to forty feet long and provided barely enough room for a vehicle to get entirely out of traffic. Findley testified that the driver did not give a signal of his intention to turn until he was pulling into the turn lane.[2] Findley estimated the crossover was "about one-tenth of a mile or about one hundred feet"[3] from the checkpoint. Findley described the turn of the vehicle into the deceleration lane as "abrupt," "immediate," and "quick." Findley testified, however, that the front end of the vehicle did not dive, nor did its brakes squeal. Findley observed no other movement of the vehicle indicating that the turn was so abrupt that it affected the operation of the vehicle. Although Findley did not observe any traffic infraction which caused him to stop the vehicle, he testified, in effect, that he stopped the vehicle because of the manner in which the operator made the U-turn, because the turn was abrupt and because the signal was given at the last moment before the turn was executed. Findley concluded that the operator turned to evade the checkpoint. These factors caused Officer Findley to suspect that the operator was taking evasive action because he was operating his vehicle in violation of the licensing or registration laws. During Officer Findley's four and one-half years experience as a state trooper, he had stopped other drivers who turned to avoid checkpoints and had found the drivers to be in violation of legal regulations.

---

[2] Other than the vehicle which was traveling beside the appellee's vehicle, there was no evidence of any other vehicle on the highway at the time which would have been affected by the appellee's turn. Accordingly, the Commonwealth does not contend that the appellee violated the provisions of Code §§ 46.2-848 and 46.2-849 requiring that a signal of a driver's intention to turn, where the posted speed limit is fifty-five miles per hour, be given continuously for at least one hundred feet.

[3] The substantial variance in the officer's estimation of the distance is unexplained. However, for the reasons that follow, under the circumstances of this case, the precise distance between the checkpoint and the point of the turn is not relevant.

■ Under *Prouse*, in order for an officer to be justified in temporarily detaining a citizen for an investigatory stop, the fourth amendment requires, at a minimum, that the officer be able to articulate a reasonable suspicion that the person is violating or has violated the law. Unlike the situation in *Murphy* where no suspicious circumstances existed apart from a lawful turn onto an existing roadway, Officer Findley observed factors which suggested that Eaves made the U-turn to evade the checkpoint. Officer Findley characterized Eaves' turn into the deceleration lane as "abrupt," "immediate," and "quick." While Eaves was not legally required to give a signal of his intention to turn because no other vehicles were affected by his movement, the fact that he gave his signal while he was making the turn, rather than some distance before, is a factor supporting Officer Findley's conclusion that the decision to turn was not contemplated but, rather, was spontaneous and a result of Eaves' observation of the checkpoint. Under the circumstances of this case, as disclosed by the record, we hold that Findley possessed reasonable suspicion that Eaves' purpose in turning was to avoid the roadblock. Evasive action is a factor which can support an inference of a consciousness of guilt. *See, e.g., Bowie v. Commonwealth*, 184 Va. 381, 391, 35 S.E.2d 345, 349-50 (1945); *Hope v. Commonwealth*, 10 Va. App. 381, 386, 392 S.E.2d 830, 834 (1990). The stop, therefore, did not violate fourth amendment protections. Accordingly, we reverse the ruling of the trial court and remand the case to the circuit court for further proceedings.

*Reversed and remanded.*

Elder, J., concurred.

Koontz, C.J., dissenting.

I respectfully dissent. I agree with the majority that our decision in *Murphy v. Commonwealth*, 9 Va. App. 139, 384 S.E.2d 125 (1989), did not overrule our decision in *Stroud v. Commonwealth*, 6 Va. App. 633, 370 S.E.2d 72 (1988), and that these decisions may be reconciled based upon the "subtle" factual differences between them. In my view, the trial judge correctly determined from the totality of the circumstances that Trooper Findley did not have an articulable reasonable suspicion to justify an investigatory stop of Eaves' motor vehicle.

In *Murphy*, we held that "a legal turn into an existing roadway prior to reaching a checkpoint, *standing alone*, does not warrant reasonable suspicion that the operator is involved in criminal activity." 9 Va. App. at 145-46, 384 S.E.2d at 129 (emphasis added). In *Murphy*, we acknowledged that such a turn by a driver may justify a "hunch" by an experienced police officer [such as Trooper Findley] that the driver might be in violation of the traffic laws or might be involved in criminal activity, but that a "hunch" will not support an investigatory stop. *Id.*

In the present case, Eaves made a legal turn from the proper lane at a crossover of a four lane highway, which was designated to allow such turns. The crossover, according to one version of Trooper Findley's testimony, was approximately 528 feet prior to the checkpoint. It is not disputed that the crossover was the proper place to turn for a motorist to reach houses located across the highway at that point. While not required to do so, Eaves gave a signal of his intention to make the turn. He accomplished the turn without erratic driving, such as unusual braking. These facts, as determined by the trial judge, are not distinguishable from those in *Murphy*. Even "subtle" factors cannot establish a difference between the two cases.

The majority implicitly finds a "subtle" distinction between the totality of these facts from those in *Murphy* based primarily upon Trooper Findley's description of Eaves' turn as "abrupt," "immediate" and "quick." The trial judge, however, was not pursuaded that this description of Eaves' turn was meaningful when balanced against all of the remaining facts which established that Eaves made a legal turn without any erratic driving. Moreover, the officer's description of the turn supports no more than a "hunch" by an experienced officer that Eaves made the turn to avoid the checkpoint. Such a hunch does not constitute an articulable reasonable suspicion of criminal activity to justify an investigatory stop.

For these reasons, in my view, the trial judge correctly determined that *Murphy* was controlling. Accordingly, I would affirm that determination.