COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


SHANE LARUE BAILEY
                                          OPINION BY
v.    Record No. 2799-97-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JANUARY 5, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Sandra Lynn Haley, Assistant Public Defender,
for appellant.

Richard Barton Campbell, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Shane Larue Bailey (appellant) appeals his conviction for driving after having been adjudged an habitual offender in violation of Code § 46.2-357.  The sole issue raised is whether the evidence established a reasonable, articulable suspicion upon which to stop appellant.  Finding the evidence sufficient, we affirm.

The facts are undisputed.  On February 6, 1997 between 1:00 p.m. and 2:00 p.m., Trooper J.L. Turner (Turner) and two other officers were conducting a roadblock at the intersection of Routes 606 and 674 in Henry County.  Traffic was "light."  There was a knoll on the road north of the roadblock, and a driver travelling south could not see the roadblock until the vehicle came to the top of the knoll.

As Turner looked north from the roadblock, he saw

appellant's vehicle reach the top of the knoll, "stop suddenly," and turn right into the driveway of a private residence approximately 50-75 yards (150-225 feet) from the roadblock. Turner stated that appellant drove slowly into the driveway as if hesitant about stopping there and he continued to look at Turner. As appellant stepped out of the vehicle, he continued to look at Turner and the other two troopers.[1]

Turner walked toward appellant, who knocked on the front door of the residence and then walked back toward his vehicle. Turner approached appellant and asked him for his "driver's permit." Appellant stated that it was in his car and he went to retrieve it. He gave Turner a Virginia identification card rather than a driver's license. Turner said, "You're on a suspended license," and appellant responded, "No, I'm an habitual offender." Turner then placed appellant in his patrol car and ran a DMV check, which verified that appellant was an habitual offender.

Turner testified that at the time he first saw appellant he was committing no traffic violation. Additionally, appellant did not attempt to make a U-turn to avoid the roadblock. Rather, Turner testified that "[t]he only reason I approached [appellant]

---

[1]Specifically, Trooper Turner testified that "[t]he vehicle was kind of real hesitant about going in the driveway. I can remember that. It was real slow to stop. As he was turning in the driveway, I was watching the vehicle and the driver, and the driver kept looking toward me. He was going real slow, like he was real hesitant about stopping at the driveway."

in the first place was his suspicious way he was going through the driveway and kept looking at me."

Appellant was charged with driving after having been declared an habitual offender, second offense, in violation of Code § 46.2-357. In denying appellant's pretrial motion to suppress, the court stated:

> In this situation . . . [appellant's] vehicle immediately came to a stop and then in a very hesitant fashion turned into a private driveway at the same time, according to the trooper, the [appellant] is basically keeping his eye on the police officers, goes up and knocks on the door. While he's knocking on the door, he's still watching the State Troopers. It's my feeling the trooper in this case had reasonable articulable suspicion and had the perfect right to go up and see what was going on.

Accordingly, the trial court found appellant guilty as charged.

II.

When the police stop a vehicle and detain its occupants, the action constitutes a "seizure" of the person for Fourth Amendment purposes. See Delaware v. Prouse, 440 U.S. 648, 653 (1988); Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988). If the stop of the vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). Any warrantless stop of a vehicle which leads to an arrest of its occupants requires probable cause to believe that a crime has been committed. See Prouse, 440 U.S. at 654 n.10. However, if

- 3 -

an officer has an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law," the officer may conduct an investigatory stop of the vehicle limited in time and scope to ascertaining whether the suspicions are accurate.  Id. at 663; Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); Zimmerman, 234 Va. at 611, 363 S.E.2d at 709.

In the present case, appellant was seized within the meaning of the Fourth Amendment when Turner approached and asked for appellant's driver's license.  See Thomas v. Commonwealth, 24 Va. App. 49, 55-56, 480 S.E.2d 135, 138 (1997) (en banc); Brown v. Commonwealth, 17 Va. App. 694, 695, 440 S.E.2d 619, 620 (1994). However, at the time of the seizure, Turner had a reasonable basis for believing that appellant was evading the roadblock. See Commonwealth v. Eaves, 13 Va. App. 162, 408 S.E.2d 925 (1991); Stroud v. Commonwealth, 6 Va. App. 633, 636, 370 S.E.2d 721, 723 (1988).

In Stroud, we held that a police officer had a reasonable, articulable suspicion of wrongdoing when he observed the defendant make a U-turn within 100-150 feet of a police roadblock.  See Stroud, 6 Va. App. at 636, 370 S.E.2d at 723. The officer testified that based upon his eleven years of experience with the state police he suspected from the driver's conduct that he was attempting to avoid the roadblock because he

was either unlicensed or otherwise in violation of the law.  See id. at 634-35, 370 S.E.2d at 722.

Likewise, in Eaves, the officer observed the defendant make a U-turn approximately 100 feet to 1/10 mile before the traffic checkpoint.  The officer testified that the defendant was traveling in the left southbound lane when "all of a sudden" he engaged his turn signal at a deceleration lane, made a U-turn, and headed back in the opposite direction from the roadblock.  See Eaves, 13 Va. App. at 165, 408 S.E.2d at 927.  The deceleration lane was only about 35-40 feet long.  The officer described the turn of the vehicle as "abrupt," "immediate," and "quick."  Id.  We concluded that the officer's observations gave him a reasonable, articulable suspicion to stop the defendant.  See id. at 166, 408 S.E.2d at 927-28.

In the instant case, appellant's conduct produced at least as much reasonable suspicion of possible criminal activity as that involved in Stroud and Eaves and was sufficient to support Turner's stop of appellant.  As Turner looked north from the roadblock, he saw appellant's vehicle reach the top of the knoll, "stop suddenly," and turn right into the driveway of a private residence.  Turner described appellant's behavior as "real hesitant," "slow to stop," "going real slow," "like he was real hesitant about stopping in the driveway."  Moreover, appellant "started easing up into the driveway . . . looking at [Turner] at all times."  We find that this evidence gave Turner reasonable

suspicion that appellant turned to avoid the roadblock because he was unlicensed or otherwise in violation of the law. Murphy v. Commonwealth, 9 Va. App. 139, 384 S.E.2d 125 (1989), relied on by appellant, is distinguishable from this case. We held in Murphy that a legal right turn onto a dead-end road with a roadblock in view, without more, did not give police reasonable suspicion to suspect the defendant of criminal misconduct. See id. at 141, 384 S.E.2d at 126. Appellant argues that like the driver in Murphy, his actions in making a right turn into a private driveway 50-75 yards ahead of the roadblock did not give Turner a reasonable suspicion that criminal activity may have occurred or been occurring. We disagree.

In Murphy, the officer observed the defendant make a "normal and legal" right turn onto a dead-end street approximately 350 feet before a checkpoint. Id. (emphasis added). The officer acknowledged that nothing distinguished the operation of the defendant's vehicle from that of any other driver attempting to make a right turn. See id. Unlike the situation in Murphy where no suspicious circumstances existed apart from a lawful turn into an existing roadway, Turner observed factors which "independently raise[d] suspicion of criminal activity" and suggested that appellant made the turn into the private residence to evade the roadblock. Id. at 145, 384 S.E.2d at 128 (emphasis added). Turner described appellant's car as "stop[ping] suddenly" when it reached the top of the knoll. Additionally, appellant "slowly"

turned into the driveway while constantly keeping his eyes on

Turner.   Under the circumstances of this case, we hold that

Turner possessed a reasonable suspicion that appellant's purpose

in turning was to avoid the roadblock because he was unlicensed

or involved in criminal activity.  Accordingly, we affirm appellant's conviction.

<u>Affirmed.</u>
