COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


ELBERT LAMONT McCAIN

MEMORANDUM OPINION* BY
v.    Record No. 2368-99-3      JUDGE ROSEMARIE ANNUNZIATA
JULY 18, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

Elwood Earl Sanders, Jr., Appellate Defender
(S. Jane Chittom, Appellate Counsel; Public
Defender Commission, on brief), for
appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellee.


Appellant, Elbert Lamont McCain, appeals his conviction by

the trial court without a jury for possession of cocaine with

the intent to distribute in violation of Code § 18.2-248, and of

possession of a firearm while possessing cocaine with the intent

to distribute in violation of Code § 18.2-308.4(B). He contends

the searches of him and his vehicle violated his rights under

the Fourth Amendment and that the evidence was insufficient to

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

sustain the convictions.[1]  For the reasons that follow, we affirm the convictions.

We review the evidence on appeal in the light most favorable to the Commonwealth, and grant to it all reasonable inferences that may be fairly drawn from it.  See Glasco v. Commonwealth, 26 Va. App. 763, 773, 497 S.E.2d 150, 155 (1998), aff'd, 257 Va. 433, 513 S.E.2d 137 (1999).  At approximately 2:00 a.m. on March 16, 1999, Richard Thomas, a police officer in Danville, was patrolling the Grove Street/Gay Street area of the city after the police department received several reports of drug activity and suspicious people there.

McCain was sitting in his parked car with another individual in front of an apartment building on Grove Street. Thomas saw the car, then drove around the block and called for another officer to assist him in the investigation.  He returned to Grove Street and pulled in behind the vehicle.  A black female who had not been there previously was leaning into the driver's door.  In addition to his headlights, Thomas illuminated his spotlight and directed it toward McCain's vehicle.

---

[1] McCain was sentenced to seven years in prison and a fine of $700 on the first charge and three years in prison on the second.  The court suspended the prison sentence on condition he serve four years in prison, followed by one year of probation and five years of good behavior.

As Thomas exited his vehicle and approached the car, the woman began to walk away. Thomas stopped her and asked, "what was going on." She responded that "she was talking with her brother" and continued walking. Thomas returned to the car and shined his flashlight into the back seat "to make sure that there[ ] [was] nothing that[ ] [was] going to surprise me."

When Thomas asked McCain what he was doing there, McCain responded that he had come to see his brother who lived in the apartments in front of which he was parked. He also told Thomas that the woman who had just left was "a friend."

McCain handed Thomas a valid driver's license upon the officer's request for identification. The passenger in the vehicle, Samuel Glass, did not have identification but provided his name and a valid social security number and address. Thomas "ran both of their social security numbers, and checked [for outstanding] warrants. They both came back clean."

After Thomas returned McCain's driver's license to him he asked McCain if there were any weapons or contraband in the vehicle. McCain responded in the negative. When Thomas asked for permission to search the car, McCain consented. Thomas asked both men to exit the car and move to the back of it. He approached McCain and explained, "For my safety, I'm gonna pat you down for a weapon." McCain "started getting a little irate" and asked Thomas why a search of his person was necessary.

Thomas told McCain the pat-down was for Thomas' safety and stated that Thomas had a right to pat him down for weapons.

McCain began turning away, saying he did not want Thomas to touch him, stepping backwards as he spoke. Thomas followed, but ultimately permitted McCain to walk up the sidewalk to avoid getting caught between McCain and Glass without a back-up officer on the scene. Thomas patted down Glass and then redirected his attention to McCain, who had walked about 35 feet to the front door of the apartments and was banging loudly on the door asking someone to open it. A chain link fence and a gate separated the sidewalk from the yard in front of the house. As Thomas began to walk towards the area near the gate, McCain walked to the right of the front door behind a set of steps that led to the second floor. Through decorative openings in a concrete wall that separated him from McCain, Thomas could see the shadow of McCain's arm reach out, and he could hear the sound of metal rubbing against metal. After McCain walked back behind the steps towards the front door, Thomas approached him, followed by Officer Church. Thomas again explained that he was going to pat McCain down for the officers' safety. McCain permitted the pat-down; nothing unusual was found.

Thomas retraced McCain's steps to the area behind the stairs, and there found a metal grocery cart. A handgun was inside the cart. Thomas walked back to McCain, held up the gun

and asked, "What was this?" McCain reacted by fleeing through the front gate. Thomas gave chase, calling out that he was under arrest for carrying a concealed weapon. Thomas caught up with McCain after McCain fell as he turned left onto Monroe Street. After a brief struggle, Officers Thomas, Church and Guill succeeded in handcuffing McCain. As they lifted McCain from the ground, Thomas found a digital scale and its cover "right below his person." Upon searching McCain, Thomas found a small bag containing a white rock substance later determined to be cocaine in McCain's right front pocket, $937 in cash in another pocket, and a change purse. Thomas opened the change purse at the jail and found an additional $9.36 and a small plastic bag containing a white powder substance, also determined to be cocaine.

In the course of inventorying McCain's car, Thomas found a pager, a cell phone, and a plastic bag containing two individually wrapped, large off-white substances in rock form. The white substances proved to be cocaine, weighing almost 60 grams.

### THE MOTION TO SUPPRESS

When a motion to suppress is reviewed on appeal, we examine the records of both the suppression hearing and the trial to determine whether the evidence was lawfully seized. See Spivey v. Commonwealth, 23 Va. App. 715, 721, 479 S.E.2d 543, 546

(1997).  The burden is on the defendant to demonstrate that the trial court's ruling was "plainly wrong."  Mu'Min v. Commonwealth, 239 Va. 433, 440, 389 S.E.2d 886, 891 (1991).  We review de novo "ultimate questions of reasonable suspicion and probable cause to make a warrantless search"; the determination is a "mixed question of law and fact."  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). While we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and give "due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," id. at 198, 487 S.E.2d at 261, "we apply de novo our own legal analysis of whether based on those facts a seizure occurred."  Id. (citing Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc)).

"[I]f an officer has an 'articulable and reasonable suspicion that . . . an occupant [of a vehicle] is . . . subject to seizure for violation of the law,' the officer may conduct an investigatory stop of the vehicle limited in time and scope to ascertaining whether the suspicions are accurate."  Bailey v. Commonwealth, 28 Va. App. 724, 727, 508 S.E.2d 889, 890 (1999) (quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979)).  "[T]he act of requiring a person who has been operating a motor vehicle

- 6 -

upon the public highways to produce an operator's license, is a restraint upon the individual's freedom of movement and constitutes a seizure of the person." Brown v. Commonwealth, 17 Va. App. 694, 697, 440 S.E.2d 619, 621 (1994); see Bailey, 28 Va. App. at 727, 508 S.E.2d at 890; Richmond v. Commonwealth, 22 Va. App. 257, 260-61, 468 S.E.2d 708, 709-10 (1996). In such an encounter, "a reasonable person in [the defendant's] circumstances would not . . . believe[ ] that he could terminate the encounter once the officer retained the driver's license and returned to his police vehicle to run a record check." Richmond, 22 Va. App. at 261, 468 S.E.2d at 710.

Officer Thomas testified that on the date in question, the police had received several reports of individuals possibly engaged in drug distribution in the vicinity of Grove Street and Gay Street. At approximately 2:00 a.m., he observed McCain's vehicle parked on Grove Street, with an individual leaning into the driver's side window. Given the reports received by the police of possible drug activity in that area, and Thomas' observation of an individual leaning into the window of a car parked on Grove Street at that very late hour, it was reasonable for Thomas to suspect there might be a drug transaction taking place. His limited investigation of McCain was therefore appropriate. By demanding McCain's driver's license and equivalent information from Glass in the course of his

- 7 -

investigation, and proceeding to conduct a check for outstanding warrants, Thomas effected a seizure of the two men.  See id.; Brown, 17 Va. App. at 697, 440 S.E.2d at 621.[2]  However, because Thomas' action was supported by reasonable suspicion, the seizure was lawful.

It only remains to determine whether the search was proper. We find that it was proper, based upon McCain's consent to the search.  "[S]earches made by the police pursuant to a valid consent do not implicate the Fourth Amendment."  McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc) (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)).  "A consensual search is reasonable if the search is within the scope of the consent given."  Bynum v. Commonwealth, 23 Va. App. 412, 417, 477 S.E.2d 750, 753 (1996) (citation omitted).  When Thomas asked about the presence of weapons or contraband in the vehicle, he was granted permission to search it.  The pager,

---

[2] The Commonwealth's reliance on Richmond is misplaced.  The Commonwealth contends that in Richmond we found a seizure only because the police officer did not return the defendant's license after he took it.  The Commonwealth relies upon our quotation from United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995), for this assertion ("[W]hat began as a consensual encounter quickly became an investigative detention once the [officer] received [appellant's] driver's license and did not return it to him.").  The facts of Richmond belie this contention, however, as the officer there returned the defendant's license before the challenged evidence was discovered.  Thus, insofar as the language quoted from Lambert suggests that a seizure only occurs when an officer fails to return the defendant's license, that language is dicta.

cell phone and cocaine later found as a result of the search were properly admitted into evidence.

When Thomas sought consent to conduct a pat-down search, McCain refused and walked away from the officer to the front door of the apartments on Grove Street.  While McCain stood behind the stairs of the apartment building, Thomas heard a "metal on metal" sound and saw the shadow of McCain's arm reach over the metal grocery cart where McCain was standing.  When McCain returned to where Thomas and Glass were standing, he permitted the pat-down.  However, the search produced nothing of any consequence.

After searching McCain's person, Officer Thomas investigated behind the stairs of the apartment building and found the handgun McCain had deposited there.  When Thomas presented the gun to McCain and asked, "What was this?," McCain instantly fled.  McCain's flight after being shown and asked about the gun, when viewed together with all the circumstances of the case, gave rise to probable cause to arrest him for possession of a concealed weapon.  See Langhorne v. Commonwealth, 13 Va. App. 97, 102, 409 S.E.2d 476, 479 (1991); see also Illinois v. Wardlow, 120 S. Ct. 673, 676 (2000).  The evidence found in the course of searching McCain incident to his arrest, which included cocaine and some $937 in cash, was therefore properly admitted into evidence.  See Commonwealth v.

Gilmore, 27 Va. App. 320, 327, 498 S.E.2d 464, 468 (1997) ("One of the established exceptions to the Fourth Amendment's warrant requirement is for a 'search incident to a lawful arrest.'" (quoting United States v. Robinson, 414 U.S. 218, 224 (1973))).

## SUFFICIENCY OF THE EVIDENCE

"On appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999). The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it. See id. The credibility of the witnesses, the weight accorded the testimony, and the inferences to be drawn from proved facts are matters to be determined by the fact finder. See id.

### Proof of Intent to Distribute

"'Because direct proof of intent [to distribute] is often impossible, it must be shown by circumstantial evidence.'" White v. Commonwealth, 25 Va. App. 662, 668, 492 S.E.2d 451, 454 (1997) (en banc) (quoting Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988)). "'[A]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Barksdale v. Commonwealth, 31

- 10 -

Va. App. 205, 211, 522 S.E.2d 388, 391 (1999) (quoting Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984)).

Factors which may be considered to determine intent include the quantity of drugs found, the presence of an unusual amount of money, the presence of drug paraphernalia consistent with involvement in the drug trade rather than personal use, such as a scale, see Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (en banc), or a pager, see White, 25 Va. App. at 668, 492 S.E.2d at 454, and the presence of firearms, which are also "recognized as tools of the drug trade, the possession of which are probative of intent to distribute." Glasco, 26 Va. App. at 775, 497 S.E.2d at 156. Here, the police found 59.96 grams of cocaine in McCain's car, 55 of which were packaged in two separate blocks in a single plastic bag. Cf. White, 25 Va. App. at 664, 492 S.E.2d at 452 (1.54 grams of cocaine found, a relatively small amount). The amount and the packaging of the drugs possessed supports the conclusion that McCain possessed cocaine with the intent to distribute. The absence of evidence that McCain used drugs, the discovery of a relatively large amount of cash in his possession, and the presence of scales, a pager, and a .40 caliber semi-automatic handgun, together constitute a body of evidence which establishes beyond a reasonable doubt that McCain possessed the cocaine with the intent to distribute it.

- 11 -

## Sufficiency of the Evidence on the Possession of the Firearm

Under Code § 18.2-308.4,

> actual possession of both the firearm and the controlled substance is not required . . . . Constructive possession of either or both is sufficient for conviction. To support a conviction based upon constructive possession, the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.

Jefferson v. Commonwealth, 14 Va. App. 77, 80, 414 S.E.2d 860, 862 (1992) (internal quotation omitted).

While the evidence in this case is circumstantial, we find that it is sufficient to support McCain's convictions beyond a reasonable doubt. The trier of fact could reasonably infer from the chain of circumstances that McCain had the handgun on his person when he initially refused consent to the pat-down. After his attempt to enter his friend's house, McCain walked to the side of the house, deposited the gun in the shopping cart behind the concrete wall, and returned. He consented to the pat-down only at that point, knowing the police officer would find nothing on his person. The officer had previously seen the shadow of McCain's arm reach out over the cart, and had heard the sound of metal against metal. Nothing but the metal handgun was found in the metal shopping cart afterwards. See Powell v. Commonwealth, 27 Va. App. 173, 178, 497 S.E.2d 899, 901 (1998);

- 12 -

Collins v. Commonwealth, 13 Va. App. 177, 178, 409 S.E.2d 175, 175 (1991). McCain's flight when confronted with the gun Thomas found in the grocery cart was itself evidence of his guilt. See Wardlow, 120 S. Ct. at 676; Langhorne, 13 Va. App. at 102, 409 S.E.2d at 479. Additionally, McCain's flight gave the trier of fact a basis to conclude that McCain was lying about possession of the gun to conceal his guilt. See Marable v. Commonwealth, 27 Va. App. 505, 510-11, 500 S.E.2d 233, 236 (1998).

We find the evidence in the case sufficient beyond a reasonable doubt to support the convictions and affirm.

Affirmed.