COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Agee
Argued at Salem, Virginia


JOEL LOVELACE
                                        OPINION BY
v.    Record No. 2317-00-3      JUDGE JERE M. H. WILLIS, JR.
                                       NOVEMBER 13, 2001
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                        James F. Ingram, Judge

              Robert W. Williams, Jr. (Office of the Public
              Defender, on brief), for appellant.

              Marla Graff Decker, Assistant Attorney
              General (Mark L. Earley, Attorney General;
              Shelly R. James, Assistant Attorney General,
              on brief), for appellee.


     On appeal from his bench trial conviction of driving after

being declared an habitual offender, second offense, in

violation of Code § 46.2-357(B)(3), Joel Lovelace contends the

trial court erred in denying his motion to suppress the evidence

against him.  We affirm the judgment of the trial court.

                        I.  BACKGROUND

     On April 14, 2000, at 10:45 p.m., Officer L. R. Kennedy of

the Danville Police Department was working a traffic checkpoint

on Mount Cross Road.  He was positioned off the side of the

road, approximately "thirty-five yards" from the checkpoint when

he saw Lovelace's car heading northbound toward the checkpoint.

Officer Kennedy testified that "[a]s the car got more or less

directly in front of [his] . . . [it] seemed to start to slow down and it eventually [came] to a stop."  He testified that Lovelace stayed in the road "a second or two," looking at the checkpoint, and then "took a left into a private driveway of a residence."  The driveway was semi-circular with an entrance and an exit on Mount Cross Road.

Officer Kennedy testified that, other than Lovelace's apparent attempt to evade the checkpoint, he saw Lovelace commit no violation of law, nor did he observe an excited or panicked look on Lovelace's face.  He stated that, based on his experience with this checkpoint, he believed Lovelace was attempting to avoid the checkpoint.

Officer Kennedy observed Lovelace's vehicle until it "had made it more or less half-way through and going back towards the exit part when [Kennedy] put the lights on and [Lovelace] stopped about three-quarters of the way through."  He testified that "[Lovelace] wasn't applying brakes, there were no brake lights, he wasn't making any action to stop. . . . He continued on and stopped at about three-quarters of the way through [the driveway]."  Lovelace exited his vehicle and admitted he was avoiding the checkpoint because he was an habitual offender.

Lovelace moved to suppress the evidence against him, arguing that Officer Kennedy lacked a reasonable and articulable suspicion of criminal activity, justifying the stop of his vehicle.  The trial court denied the motion and convicted

Lovelace of driving after being declared an habitual offender, second offense.

## II. ANALYSIS

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted). "We review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

> "'[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). "In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or

have recently been involved in, some form of criminal activity." Logan, 19 Va. App. at 441, 452 S.E.2d at 367. "To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a court must consider the totality of the circumstances, including the officer's knowledge, training, and experience." Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (citing Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989)). "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'" Freeman, 20 Va. App. at 661, 460 S.E.2d at 262 (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)).

Neal v. Commonwealth, 27 Va. App. 233, 237-38, 498 S.E.2d 422, 424 (1998).

Lovelace relies on Bass v. Commonwealth, 259 Va. 470, 525 S.E.2d 921 (2000), and Murphy v. Commonwealth, 9 Va. App. 139, 384 S.E.2d 125 (1989), to argue that Officer Kennedy lacked a justifiable basis for stopping him. That reliance is misplaced.

In Bass, the Supreme Court held that a police officer lacked a justifiable basis for stopping a driver who "made a series of legal driving maneuvers the effect of which was to reverse the direction in which he was going" and which "also resulted in his not passing through the traffic checkpoint that was approximately 500 feet away." Bass, 259 Va. at 477, 525 S.E.2d at 925. The fact that Bass was the only driver who had entered, but not stopped in the gas station parking lot was consistent with a desire to make a U-turn and did not provide

the officer a reasonable suspicion that he was engaged in criminal activity.  Id.

In Murphy, the defendant made a legal right turn onto a public street approximately 350 feet from a police roadblock. The police officer admitted that the defendant's actions were no different from those of anyone lawfully turning into the street. The defendant's driving was unremarkable, other than his turn before reaching the checkpoint.  In concluding that the defendant's behavior supported no more than a "hunch" of criminal activity, we held

> that the act of a driver in making a lawful
> right turn 350 feet before a roadblock does
> not give rise to a reasonable suspicion of
> criminal activity unless the driver's turn
> or action is coupled with other articulable
> facts, such as erratic driving, a traffic
> violation, or some behavior which
> independently raises suspicion of criminal
> activity.

Murphy, 9 Va. App. at 145, 384 S.E.2d at 128.

Unlike Bass and Murphy, Lovelace's turn into the driveway, though intrinsically lawful, was suspicious.  Upon confronting the roadblock only thirty-five yards ahead of him, he stopped and hesitated, looking toward the roadblock.  Turning into the driveway, he proceeded more than half-way through, returning toward the street, with no sign of stopping.  These facts are strikingly similar to those in Bailey v. Commonwealth, 28 Va. App. 724, 508 S.E.2d 889 (1999), and Stroud v. Commonwealth, 6 Va. App. 633, 370 S.E.2d 721 (1988).

In Bailey, the defendant came to the top of a knoll and saw a police roadblock. He stopped "suddenly" and turned into the driveway of a private residence between fifty and seventy-five yards from the roadblock. Bailey, 28 Va. App. at 725, 508 S.E.2d at 889. He drove slowly into the driveway as though hesitant about stopping there and continued to look at the officer. Id. at 725-26, 508 S.E.2d at 990. Exiting his vehicle, he continued to look at the officers at the roadblock. Id. at 726, 508 S.E.2d at 889. One of the officers testified that he was suspicious of the way the defendant entered the driveway but kept looking at the roadblock. Id. at 726, 508 S.E.2d at 890. We held that these circumstances gave the officers reason to suspect that the defendant pulled into the driveway to evade the roadblock. Id. at 728, 508 S.E.2d at 891.

In Stroud, we held that a police officer had a reasonable, articulable suspicion of wrongdoing when he observed a vehicle make a U-turn within 100-150 feet of a roadblock. See Stroud, 6 Va. App. at 636, 370 S.E.2d at 723. The officer testified that based upon his eleven years of state police experience he suspected from this conduct that the driver was attempting to avoid the roadblock because he was either unlicensed or otherwise in violation of the law. See id. at 634-35, 370 S.E.2d at 722.

As Bass and Murphy hold, a driver's undertaking a lawful driving maneuver which has the effect of avoiding a checkpoint

does not, standing alone and without more, furnish reasonable suspicion of possible criminal activity. Furthermore, a police officer's generalized assertion that, based upon his training and experience, he suspected that the driver was attempting to evade the roadblock does not provide the necessary level of suspicion to support a stop. The officer must be able to point to specific suspicious facts, other than the lawful maneuver and his personal suspicion, to justify the stop. The record in this case sets forth sufficient additional facts.

Although Lovelace's turn into the driveway was intrinsically lawful, the circumstances surrounding that turn were suspicious. Lovelace approached the roadblock, stopped in the roadway for "a second or two" and observed the checkpoint before turning into a private driveway. At no point did he attempt to stop in the driveway. His conduct belied any intent to stop upon the property served by the driveway and suggested only an intent to use the driveway to effect a U-turn. The proximity of the roadblock suggested that the purpose of the U-turn was to evade the roadblock. Lovelace's suspicious behavior, coupled with Officer Kennedy's experience, supported a reasonable suspicion that Lovelace was simply using the driveway to reverse his course and evade the roadblock.

We hold that the circumstances observed by Officer Kennedy afforded him a reasonable suspicion that Lovelace was attempting to evade the roadblock because he was unlicensed or otherwise in

violation of law and justified Officer Kennedy's stop of Lovelace's vehicle.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>