COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Clements and McClanahan
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                              MEMORANDUM OPINION* BY
v.        Record No. 1869-06-3          JUDGE ELIZABETH A. McCLANAHAN
                                                  JANUARY 9, 2007
JEFFREY MAURICE WELLS


              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                            Charles J. Strauss, Judge

              Richard B. Smith, Special Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on briefs), for appellant.

              Gregory T. Casker for appellee.


       The Commonwealth appeals an order of the trial court granting Jeffrey Maurice Wells'

motion to suppress evidence.  The Commonwealth contends that the trial court erred in

concluding that the evidence presented by the Commonwealth at the suppression hearing failed

to establish an investigatory stop based on a reasonable articulable suspicion of the evasion or

avoidance of a roadblock.  For the reasons that follow, we affirm the decision of the trial court.

                                    I.  BACKGROUND

       In reviewing the trial court's decision on Wells' motion to suppress evidence, we

consider the evidence and all reasonable inferences flowing from that evidence in the light most

favorable to Wells, the prevailing party. Jackson v. Commonwealth, 267 Va. 666, 672, 594

S.E.2d 595, 598 (2004).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Virginia State Trooper Christopher L. Brooks was working at a DUI sobriety checkpoint located on Route 57 at its intersection with Route 750 in Pittsylvania County.  There were four police vehicles present at the checkpoint, one at the beginning of each roadway.  The blue lights on the police cars were activated, and road flares were located on the roadway.

At 10:45 p.m., Trooper Brooks was on Route 57 checking eastbound traffic when he saw the headlights of Wells' vehicle approaching the intersection in the eastbound lane three to four hundred yards away.  Wells' vehicle "immediately slowed down" and made an "immediate right-hand turn" into a private driveway.  Wells then "immediately did a U-turn and went back the opposite direction."  According to Trooper Brooks, Wells went just far enough into the driveway to make the turn.  Trooper Brooks did not observe the Wells vehicle give a right-hand signal when Wells turned into the driveway.  "[A]s soon as [he saw] the vehicle turn around, [Brooks] immediately proceeded to [his] patrol vehicle" to "go after the vehicle."

There were no other vehicles on the roadway at the time Trooper Brooks observed Wells make the turn into the driveway.  Although Brooks testified that he observed the "vehicle slow down rapidly" and "brake real fast," he testified that he could not tell whether Wells actually stopped or not because "all [he] could see was the lights" on the Wells vehicle.  As soon as Trooper Brooks was behind the Wells vehicle, Wells pulled onto the roadway at the next intersection.  However, Trooper Brooks could not recall the next intersection from where the checkpoint was located because it was not visible from where he was standing.  When Brooks stopped Wells, he cited him for violation of Code § 46.2-848 for his failure to use a turn signal when he made the right-hand turn into the driveway.[1]  When Trooper Brooks ran a record check,

---

[1] Code § 46.2-848 provides that

> [e]very driver who intends to back, stop, turn, or partly turn from a
> direct line shall first see that such movement can be made safely
> and, whenever the operation of any other vehicle may be affected

he determined that Wells' driver's license had been revoked and that he had been declared an habitual offender. He later arrested Wells for violation of Code § 46.2-357.[2]

Wells filed a motion to suppress the evidence obtained as a result of the traffic stop on the grounds that it violated the Fourth Amendment. The trial court held that the evidence failed to establish a reasonable articulable suspicion that Wells was violating Code § 46.2-848 or attempting to avoid or evade the checkpoint. Therefore, the trial court granted the motion to suppress. The Commonwealth has appealed only as to the trial court's ruling that there was not a reasonable articulable suspicion that Wells was attempting to avoid or evade the checkpoint. Thus, the issue of whether there was a reasonable articulable suspicion justifying the stop on the basis of Wells' failure to give a right-hand signal is not before us.

## II. ANALYSIS

When the police stop a vehicle and detain its occupants, the action constitutes a "seizure" of the person for Fourth Amendment purposes. Delaware v. Prouse, 440 U.S. 648, 653 (1979). If an officer has an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law," the officer may conduct an investigatory stop of the vehicle to ascertain whether the suspicions are accurate. Id. at 663; Murphy v. Commonwealth, 9 Va. App.

---

by such movement, shall give the signals required in this article, plainly visible to the driver of such other vehicle, of his intention to make such movement.

[2] Code § 46.2-357 provides that it shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect. Furthermore, if the offense of driving while a determination as an habitual offender is in effect is a second or subsequent such offense, such person shall be guilty of a felony.

139, 143, 384 S.E.2d 125, 127 (1989). A driver undertaking a lawful driving maneuver which has the effect of avoiding a checkpoint does not, standing alone and without more, furnish reasonable suspicion of possible criminal activity. Bass v. Commonwealth, 259 Va. 470, 525 S.E.2d 921 (2000); Lovelace v. Commonwealth, 37 Va. App. 120, 554 S.E.2d 688 (2001); Murphy, 9 Va. App. 139, 384 S.E.2d 125. "[W]hen a court reviews whether an officer had reasonable suspicion to make an investigatory stop, it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy, 9 Va. App. at 144, 384 S.E.2d at 128.

The trial court found that "the officer's testimony and evidence fails to establish a reasonable articulable suspicion of a stop based on the evasion of the roadblock or an avoidance of the roadblock." According to the trial court:

> The officer in this case did not testify he believed the defendant was trying to evade the roadblock, nor did he testify that in his experience with roadblocks, that he was able to establish an opinion as to that belief. He also didn't testify that he was able to even see the vehicle. In this case, what he testified he saw were headlights and that's what he was basing his observations on, were the headlights.

As the trial court found, Trooper Brooks saw Wells' headlights from "three to four hundred yards at night" and "saw the movement of the vehicle from the headlights." The trial court further found that Trooper Brooks "never saw the driver of the vehicle" and "there was no indication that the driver was looking . . . or saw the roadblock." Based on these findings of fact, the trial court ruled that Trooper Brooks' testimony did not establish a reasonable articulable suspicion that Wells was avoiding or evading the checkpoint.

In reviewing the trial court's decision on the motion to suppress in this case, "the burden is upon [the Commonwealth, the losing party below] to show that the ruling, when the evidence

- 4 -

is considered most favorably to [Wells, the prevailing party below], constituted reversible error." Lovelace, 37 Va. App. at 124, 554 S.E.2d at 689 (citation and internal quotation marks omitted). In performing this review, "we are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." Id. (citation and internal quotation marks omitted). "We review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Id. (citation and internal quotation marks omitted).

Wells "made a series of legal driving maneuvers, the effect of which was to reverse the direction in which he was going." Bass, 259 Va. at 477, 525 S.E.2d at 925. There was no evidence that Trooper Brooks suspected that Wells was unlicensed, that his vehicle was unregistered, or that Wells was "involved in some form of criminal or otherwise unlawful activity." Id. at 475, 525 S.E.2d at 924. And there was no evidence that Trooper Brooks suspected that Wells was attempting to avoid or evade the checkpoint.[3] In fact, the trooper never articulated any reason for the stop. "[T]he fourth amendment requires, at a minimum, that the officer be able to articulate a reasonable suspicion that the person is violating or has violated the law." Commonwealth v. Eaves, 13 Va. App. 162, 166, 408 S.E.2d 925, 927 (1991) (citing

---

[3] Cf. Lovelace, 37 Va. App. 120, 554 S.E.2d 688 (officer testified that based on his experience with a checkpoint he believed driver was attempting to avoid the checkpoint); Bailey v. Commonwealth, 28 Va. App. 724, 508 S.E.2d 889 (1999) (officer testified that driver's suspicious behavior and manner in which he made a turn into private driveway, including that the driver kept looking at the trooper and was hesitant about going into the driveway, led him to stop driver); Commonwealth v. Eaves, 13 Va. App. 162, 408 S.E.2d 925 (1991) (officer testified that based on the manner in which driver was operating his vehicle and his own experience that the driver made a u-turn to evade a checkpoint); Stroud v. Commonwealth, 6 Va. App. 633, 370 S.E.2d 721 (1988) (officer testified that based on his eleven years experience with the state police, he suspected from the driver's conduct that he was either unlicensed or otherwise in violation of the law).

Prouse, 440 U.S. 648).[4]  Considering the totality of the circumstances and viewing the evidence and all reasonable inferences flowing from that evidence in the light most favorable to Wells, we agree with the trial court's conclusion that the evidence did not establish a reasonable articulable suspicion that Wells was attempting to avoid or evade the checkpoint.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

---

[4] The Commonwealth argues that "regardless of an officer's subjective reason for stopping a vehicle, the stop is legal provided there is an objectively reasonable basis for the stop" in reliance on Whren v. United States, 517 U.S. 806 (1996).  The decision in Whren does not support the Commonwealth's position.  In Whren, the petitioners argued that the Fourth Amendment test for traffic stops should not be whether probable cause existed to justify the stop, but whether a police officer, acting reasonably, would have made the stop for the reason given.  The Court rejected the notion that an officer's ulterior motives could invalidate police conduct that is justifiable on the basis of probable cause to believe a violation has occurred.  In doing so, the Court reaffirmed the analysis set forth in Prouse.